Howard G. LANGHUS, Plaintiff-Appellant,†

v.

Wisconsin LABOR & INDUSTRY REVIEW COMMISSION,
Employers Insurance of Wausau and City of Westby,
Defendants-Respondents.

Court of Appeals

*No. 96–0622. Submitted on briefs September 6, 1996.—Decided November 14, 1996.*

(Also reported in 557 N.W.2d 450.)

†Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *William A. Kirkpatrick* of *Hale, Skemp, Hanson, Skemp & Sleik* of La Crosse.

For the defendants-respondents the cause was submitted on the brief of *James E. Doyle,* attorney general and *Monica Burkert-Brist,* assistant attorney general and adopted in its entirety by *Steve A. Cotton* of *Stilp, Cotton and Wells* of Wausau.

Before Eich, C.J., Vergeront and Deininger, JJ.

DEININGER, J. Howard Langhus appeals from a judgment affirming the decision of the Wisconsin Labor and Industry Review Commission (LIRC) denying his claim for benefits for permanent total disability. Langhus claims that LIRC exceeded its authority by requiring him to bear the burden of establishing the portion of his permanent disability attributable to an unscheduled injury. Because we conclude that LIRC's denial of permanent total disability benefits is consistent with statutes and case law governing permanent disability determinations, and with LIRC's own past practice and interpretations, we affirm.

## BACKGROUND

On January 5, 1990, Howard Langhus, while employed as a trash collector for the City of Westby, slipped on ice while getting out of a garbage truck and fell, twisting his left knee. He continued to work throughout the spring and summer despite pain caused by his knee injury. In September, a physician diagnosed a torn medial meniscus of the knee and Langhus had arthroscopic surgery. He returned to work part-time under doctor's restrictions on the amount of weight he would be allowed to lift. Even with

the restrictions, Langhus was unable to remain at work because of continuing pain in his knee.

Approximately three months later, Langhus injured his shoulder and reinjured his knee when he caught a man who collapsed in church. He remained unable to return to work due to the pain in his knee and shoulder. He had surgery for a rotator cuff tear in his shoulder in July 1991. In November 1991, a physician noted Langhus' gait had changed due to his knee problem, resulting in back pain. Langhus eventually developed reflex sympathetic dystrophy (RSD) in his right leg, which migrated to his back and other leg.

Langhus filed an application for hearing in August 1993, claiming permanent total disability due to the pain and injuries in his back, shoulder and legs. The City of Westby and its insurer conceded a ten percent permanent partial disability of the knee as compared to amputation at the knee, and paid him temporary disability benefits and benefits for the permanent partial disability.[1]

At the hearing, a physician testified that Langhus was permanently and totally disabled for vocational purposes due to the knee injury and the RSD. Also received in evidence were the reports of a physician and two vocational experts who concluded that, based on all of Langhus' injuries, he was probably totally and permanently disabled for employment purposes.[2]

---

[1] Langhus also stated at the hearing that he was claiming additional permanent partial disability on his right knee of thirty percent. The administrative law judge determined that there was no support for Langhus' claim for additional permanent partial disability of the knee. Langhus does not appeal this portion of the ruling.

[2] One other physician's report was admitted, but the report did not discuss Langhus' vocational abilities.

The administrative law judge (ALJ) determined that "[i]t appears from the evidence that the applicant may be permanently and totally disabled" and that "it appears clear that the applicant's knee problems and his shoulder problems all of which cause him pain play a substantial part in his present incapacitation." The ALJ denied the claim for permanent total disability, however, because "the only injury . . . which could be considered in determining his loss of earning capacity is his back injury" and "the record is devoid of any permanency rating with respect to the applicant's back nor are there . . . any permanent restrictions with reference to his back."

Langhus petitioned for review by LIRC. LIRC adopted the ALJ's findings and order, concluding that the claim required an assessment of lost earning capacity based specifically on the back injury as well as evidence of work restrictions due to the back. LIRC found that Langhus had failed to make either showing. Langhus appealed LIRC's decision and the trial court affirmed.

## WORKER'S COMPENSATION FOR PERMANENT DISABILITY

A worker who is injured on the job and claims to have a permanent disability at the end of the healing period may seek benefits for the permanent disability. *See* § 102.44(2)-(4), STATS. If the permanent disability stems from an injury "scheduled" under §§ 102.52, 102.53 or 102.55, STATS., (generally injuries to the extremities and impairments of sight and hearing) the benefits are determined according to the statutory schedules. Section 102.44(4).[3] The schedules provide a

---

[3] Section 102.44(4), STATS., provides:

certain number of benefit weeks for each type of injury. Benefits for an injury resulting in less than a total loss of function to a body part are calculated according to the percentage loss of function to that part. Section 102.55(3).

If a worker's permanent disability, however, is from an injury not included on the schedule (e.g., a back injury), benefits are based on the worker's loss of earning capacity. *Kurschner v. DILHR*, 40 Wis. 2d 10, 18, 161 N.W.2d 213, 217 (1968). If the permanent disability is less than total, benefits are calculated by determining the severity of the injury as compared to an injury that would render a person permanently and totally disabled for industrial purposes, and then applying the percentage loss of earning capacity to one thousand weeks. Section 102.44(3), STATS.;[4] *Kurschner*, 40 Wis. 2d at 18 & n.4, 161 N.W.2d at 217.

For permanent disabilities stemming from scheduled injuries, loss of earning capacity is not relevant. Section 102.44(4), STATS., provides that "[w]here the permanent disability is covered by ss. 102.52, 102.53 and 102.55, such sections shall govern." The statute does not differentiate between permanent total disability and permanent partial disability. Thus, even if a worker is totally permanently disabled for employment purposes (i.e., has lost one hundred percent of his or

Where the permanent disability is covered by ss. 102.52, 102.53 and 102.55, such sections shall govern; provided, that in no case shall the percentage of permanent total disability be taken as more than 100 per cent.

[4] Section 102.44(3), STATS., states:

For permanent partial disability not covered by ss. 102.52 to 102.56, the aggregate number of weeks of indemnity shall bear such relation to 1,000 weeks as the nature of the injury bears to one causing permanent total disability . . . .

her earning capacity), if the loss is due to a scheduled injury, he or she may only receive the scheduled benefits. *See Mednicoff v. DILHR*, 54 Wis. 2d 7, 11-12, 194 N.W.2d 670, 672 (1972).[5]

Finally, where a worker is permanently and totally disabled due to (1) an unscheduled injury, (2) certain enumerated combinations of scheduled injuries, or (3) "in other cases" as determined by the Department of Workforce Development (DWD), compensation is weekly for life:[6]

> In case of permanent total disability aggregate indemnity shall be weekly indemnity for the period

---

[5] Wisconsin is among a minority of states adhering to the "doctrine of exclusiveness," by which the schedule allowances are deemed exclusive even where a scheduled injury has caused a total loss of earning capacity. *See* 1C ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION §§ 58.20 and 58.23 (1996). The dominant trend is to regard the schedule as nonexclusive and to allow an agency to award more than the schedule where a scheduled injury causes pain to additional parts of the body, *id.* at § 58.21, or to award permanent total disability where a scheduled injury causes total loss of earning capacity. *Id.* at § 58.23. The nonexclusivity trend is discussed favorably in LARSON:

> To refuse total disability benefits in such a case, when total disability is otherwise established . . . has the effect of ruling out the inability-to-get-work element in a listed group of injuries which just happen to take the form of a neatly classifiable loss of a member. . . . [I]t is difficult to see why this factor [earning capacity] is relevant in case of loss of a lung but not in case of loss of a leg.

*Id.*

[6] Worker's compensation insurance carriers apparently will often concede total disability when compensation for a combination of scheduled injuries total more than one thousand weeks of benefits. *See* JOHN D. NEAL & JOSEPH DANAS, JR., WORKER'S COMPENSATION HANDBOOK § 5.30 (3d ed. 1996).

that the employe[e] may live. Total impairment for industrial use of both eyes, or the loss of both arms at or near the shoulder, or of both legs at or near the hip, or of one arm at the shoulder and one leg at the hip, constitutes permanent total disability. This enumeration is not exclusive, but in other cases the department shall find the facts.

Section 102.44(2), STATS.

With the foregoing as a backdrop, we now turn to the specific issues of Langhus' appeal.

## ANALYSIS

Langhus claims a permanent total disability due to both a scheduled injury, his left knee, and an unscheduled injury, his back. He argues that because there is evidence he is permanently and totally disabled overall, § 102.44(2), STATS., applies, and he is thus entitled to benefits for life. LIRC determined, however, that Langhus had failed to show what portion of his disability was due to each of his scheduled knee injury and his unscheduled back injury. LIRC, citing *Mednicoff v. DILHR*, 54 Wis. 2d 7, 194 N.W.2d 670 (1972), concluded that without evidence from which it could determine the percentage of overall disability due to the back injury, it could not award benefits beyond the schedule allowance for the knee injury.

We review LIRC's decision, not that of the trial court. *Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981). We do not weigh the evidence or pass upon the credibility of the witnesses; LIRC's findings of fact will be upheld on appeal if they are supported by credible and substantial evidence in the record. Section 102.23(6), STATS.; *see Applied Plastics, Inc. v. LIRC*, 121 Wis. 2d 271, 276, 359 N.W.2d 168, 171 (Ct. App. 1984).

501

We are not bound by LIRC's legal conclusions, *DHSS v. LIRC*, 159 Wis. 2d 300, 309, 464 N.W.2d 74, 77 (Ct. App. 1990), and we will review its conclusions of law de novo when the case is one of first impression. *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 245-46, 493 N.W.2d 68, 73-74 (1992). In certain situations, however, we defer to LIRC's interpretation of a statute. *State ex rel. Parker v. Sullivan*, 184 Wis. 2d 668, 699, 517 N.W.2d 449, 460-61 (1994). When the following four requirements are met, we will accord LIRC's interpretation great weight:

> "(1) the agency was charged by the legislature with the duty of administering the statute; (2) . . . the interpretation of the agency is one of long-standing; (3) . . . the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) . . . the agency's interpretation will provide uniformity and consistency in the application of the statute."

*UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57, 61 (1996) (quoting *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98, 102 (1995)).

Langhus argues that because this case presents a "novel question of law" and because LIRC's interpretation contravenes § 102.44, STATS., we should employ de novo review. We disagree. LIRC is charged with reviewing worker's compensation determinations under Chapter 102, STATS., and it has expertise and specialized knowledge in the subject matter of that chapter. *See* § 101.04, STATS. LIRC has consistently interpreted § 102.44 to require apportionment between scheduled and unscheduled injuries in analogous cases of permanent partial disability, and this interpretation has been upheld by the Wisconsin Supreme Court. *See*

*Vande Zande v. DILHR*, 70 Wis. 2d 1086, 1091-93, 236 N.W.2d 255, 258 (1975); *see also Mednicoff v. DILHR*, 54 Wis. 2d 7, 13-14, 194 N.W.2d 670, 673 (1972).[7]

We will therefore defer to LIRC's interpretation if it is reasonable, even though other interpretations may be equally, or even more, reasonable. *See UFE*, 201 Wis. 2d at 287 & n.3, 548 N.W.2d at 62-63; *Carrion Corp. v. DOR*, 179 Wis. 2d 254, 264-65, 507 N.W.2d 356, 359 (Ct. App. 1993).

In *Vande Zande v. DILHR*, 70 Wis. 2d 1086, 236 N.W.2d 255 (1975), the supreme court held that where a claimant is permanently partially disabled as a result of both unscheduled and scheduled injuries, under § 102.44(4), STATS., LIRC may require that the portion of the permanent disability attributable to the scheduled injury be determined and compensated separately from that attributable to the unscheduled injury. Vande Zande had sought 400 weeks of benefits for his forty percent permanent partial disability attributable to head injuries which caused loss of hearing, dizziness and other effects. The Department of Industry, Labor and Human Relations, however, apportioned one-half of his permanent disability to the hearing loss, a sched-

---

[7] We note further that LIRC has required similar apportionments of disability between scheduled and unscheduled injuries in *Soper v. LIRC*, No. 87-0167 (Wis. Ct. App. Aug. 5, 1987) and in *Steberger v. Mayfair Chrysler Plymouth*, Claim No. 92006315, 1994 WL 728550 (LIRC Dec. 21, 1994). These decisions are noted not as precedent but to show that LIRC's interpretation of § 102.44, STATS., is consistent and longstanding. *See also* WIS. ADM. CODE § DWD 80.50(2) (benefit weeks attributable to scheduled disabilities shall be deducted from one thousand weeks before computing benefit weeks for a nonscheduled disability resulting from the same injury).

uled injury, and awarded fifty-five weeks of benefits per the schedule for that portion of the disability. The remaining half of his disability, equivalent to twenty percent permanent partial disability, was attributed to the unscheduled head injuries, for which the claimant was awarded 200 weeks of benefits. In upholding this determination, the supreme court said:

> In the instant case, the applicant suffered a loss specifically recognized and compensable under sec. 102.52.
>
> If a loss is sustained which is recognized by and compensable under [the schedule], the schedule therein is exclusive. Sec. 102.44(4), provides in part, that:
>
>> (4) Where the permanent disability is covered by the provisions of section[s] 102.52, . . . such section[s] shall govern;. . .
>
> That this language rendered exclusive the statutory schedule for certain specific losses listed in § 102.52 was recognized by this court in *Mednicoff v. ILHR Department* (1972), 54 Wis. 2d 7, 14, 194 N. W. 2d 670. In the instant case, the additional physical effects of deafness sustained in one ear have not been ignored by the department. They form the basis for the award of benefits of 20 percent permanent partial disability. The scheduled benefits for total loss of hearing in one ear are applicable and exclusive in this situation.

*Vande Zande*, 70 Wis. 2d at 1093, 236 N.W.2d at 258.

Thus, if Langhus had claimed permanent partial disability, LIRC could properly require him to submit evidence indicating what portion of his disability was due to an unscheduled, as opposed to a scheduled, injury. However, Langhus claims permanent total dis-

ability, a 100% loss of earning capacity.[8] He argues that § 102.44(2), STATS., obviates the need to apportion between disability attributable to a scheduled injury and that attributable to an unscheduled injury because lifetime benefits will be paid. According to Langhus, it makes no difference how many weeks of benefits are deemed compensation for the scheduled knee injury because the benefits continue indefinitely.

LIRC interprets § 102.44(4), STATS., to require the same apportionment between scheduled and unscheduled injuries for permanent total disability as was upheld for permanent partial disability in *Vande Zande*, 70 Wis. 2d at 1093, 236 N.W.2d at 258. We conclude that LIRC's interpretation is reasonable. Section 102.44(4) requires that scheduled compensation be exclusive in all cases of "permanent disability." The statute makes no distinction between permanent partial disability and permanent total disability.[9]

---

[8] The parties disagree whether Langhus claimed a permanent total disability under § 102.44(2), STATS., (Langhus' contention) or a permanent partial disability (LIRC's contention). Both have support in the record. If it is a permanent partial disability case, *Vande Zande v. DILHR*, 70 Wis. 2d 1086, 236 N.W.2d 255 (1975), decides it adversely to Langhus. LIRC adopted the ALJ's findings, which included: "In this proceeding the applicant is claiming permanent total disability." and "It appears from the evidence that the applicant may be permanently and totally disabled." Given these findings, we concur with Langhus that we must address whether LIRC was within its authority in denying his claim for permanent total disability benefits.

[9] We note that LIRC's interpretation does not preclude a claimant who can prove total disability, stemming from both scheduled and unscheduled injuries, from receiving lifetime benefits. Section 102.44(2), STATS., specifically provides that certain combinations of scheduled injuries are deemed to consti-

Langhus has not suggested a more reasonable interpretation of § 102.44. He urges that lifetime benefits be awarded him for permanent total disability because some unspecified portion of his disability is attributable to an unscheduled injury, notwithstanding the fact that the disability is also attributable in part to a scheduled injury. This interpretation ignores the mandate of § 102.44(4) and *Mednicoff v. DILHR*, 54 Wis. 2d 7, 11-12, 194 N.W.2d 670, 672 (1972), that compensation for loss of earning capacity may not be awarded for scheduled injuries. Such an interpretation would also be a significant departure from LIRC'S past practice and interpretations of chapter 102.

We conclude that LIRC did not exceed its authority in placing the burden on Langhus to prove that an ascertainable portion of his total disability was attributable to other than a scheduled injury.

Langhus next argues that even if apportionment is required, he has met his burden of proof. The weight and credibility of the evidence is to be determined by LIRC. Section 102.23(6), STATS. We must uphold LIRC's findings of fact if supported by substantial and credible evidence. Section 102.23(6). A claimant in a worker's compensation case has the burden of proving

---

tute permanent total disability. In other situations, DWD is directed to "find the facts." There is no reason, therefore, that a claimant with both scheduled and unscheduled injuries could not establish facts that would allow LIRC to award benefits for permanent total disability under § 102.44(2). The burden of making that showing, however, rests on the claimant. *See Bumpas v. DILHR*, 95 Wis. 2d 334, 342-43, 290 N.W.2d 504, 507-08 (1980).

the elements of his or her claim. *Bretl v. LIRC*, 204 Wis. 2d 93, 99, 553 N.W.2d 550, 552 (Ct. App. 1996).

LIRC adopted the findings of the ALJ, who found that Langhus had not introduced sufficient evidence from which the portion of his disability due to his back injury could be determined.[10] Langhus was examined by several medical doctors and two vocational experts. Some of the experts placed physical work restrictions on Langhus and reported that he is totally and permanently disabled for vocational purposes. Langhus, however, does not cite to any portion of the record indicating an estimation, or facts from which an estimation might be made, of the portion of his disability *due to his back*. Instead, he suggests we adopt an "artificial apportionment," attributing some unspecified portion of his overall disability to his scheduled knee injury[11]

---

[10] As discussed above, benefits for an unscheduled injury are based on loss of earning capacity. *Kurschner v. DILHR*, 40 Wis. 2d 10, 18, 161 N.W.2d 213, 217 (1968). In *Pfister & Vogel Tanning Co. v. DILHR*, 86 Wis. 2d 522, 528, 273 N.W.2d 293, 296 (1979), the supreme court held that "as to non-schedule injuries 'any award for permanent partial disability must be based upon some kind of a prediction as to the impairment of earning capacity.' " We have previously held that the prediction of loss of earning capacity "need not be presented by an employment expert; a qualified physician and even the Department itself can determine the percentage of such disability." *Bituminous Cas. Co. v. DILHR*, 97 Wis. 2d 730, 736, 295 N.W.2d 183, 187 (Ct. App. 1980).

[11] Langhus states in his brief that "[a] 10% disability of the knee . . . would be 42.5 weeks . . . . The remainder of his disability would be attributable to the unscheduled injury." The ten percent disability figure represents the percentage disability of Langhus' knee compared to amputation of the knee. *See* § 102.55(3), STATS. It does not indicate what portion of Langhus' overall disability is attributable to his knee.

and "the remainder of his disability" to his unscheduled back injury. Neither LIRC nor we may rest a compensation award upon such a speculation. *See Kurschner v. DILHR*, 40 Wis. 2d 10, 19-20, 161 N.W.2d 213, 218 (1968) (general statements about the ability of the claimant to earn a living are insufficient to support a claim for compensation).

If Langhus' medical and vocational evidence were that all, or virtually all, of his loss of earning capacity is attributable to the back injury, LIRC may have been able to conclude that the back injury, coupled with the knee injury, produced a permanent total disability under § 102.44(2), STATS. The record is vastly different however. If anything, the evidence indicates that a substantial portion of Langhus' permanent disability stems from his scheduled knee injury. There was thus a legitimate doubt as to Langhus' entitlement to compensation for permanent total disability stemming from other than a scheduled injury, and LIRC had a duty to deny compensation. *See Bumpas v. DILHR*, 95 Wis. 2d 334, 342-43, 290 N.W.2d 504, 507-08 (1980).

We conclude that LIRC has not exceeded its authority in denying Langhus benefits for permanent total disability, and we thus affirm the judgment of the trial court.

*By the Court.*—Judgment affirmed.