NORTH RIVER INSURANCE COMPANY and Freedom Plastics, Inc., Plaintiffs-Respondents,

v.

MANPOWER TEMPORARY SERVICES and Employers Mutual Companies, Defendants-Appellants,

Alexander J. BUCZKO and Labor and Industry Review Commission, Defendants.

Court of Appeals

*No. 96–2000. Submitted on briefs March 27, 1997.—Decided June 4, 1997.*

(Also reported in 568 N.W.2d 15.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Roger H. Weede of Law Offices of Roger H. Weede,* of Milwaukee, *Linda M. Jozefacki of Jozefacki Law Offices* of Milwaukee of counsel.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Michael J. Hicks and Cori Lynn Crogan of Hills and Hicks, S.C.* of Brookfield.

Before Snyder, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J. This is a worker's compensation case. The dispute is between Manpower Temporary Services (Manpower), the former employer of Alexander J. Buczko, and Freedom Plastics, Inc. (Freedom), Buczko's present employer.[1] The issue is

---

[1] The parties' respective insurers are also parties.

which employer is liable for worker's compensation benefits paid to Buczko as a result of his carpal tunnel syndrome.

The Labor and Industry Review Commission (LIRC) held that Freedom is liable. The circuit court reversed, holding that Manpower is liable. We reverse the circuit court's ruling and reinstate the LIRC holding.[2]

## FACTS

The facts concerning Buczko's employment history with Manpower and Freedom are not in dispute. We take that history largely from the administrative law judge's (ALJ) findings of fact which LIRC later confirmed.

On November 12, 1992, Buczko began work at Freedom as a Manpower temporary employee. While a Manpower employee under this arrangement, Buczko performed deburring jobs for Freedom. During this time, Buczko experienced pain in his right wrist. However, he did not complain to anyone about this problem and he lost no work time.

On December 31, 1992, Buczko terminated his temporary employment status with Manpower and became a Freedom employee. His first day of work was January 4, 1993, during which he continued his deburring tasks. At the end of that work day, Buczko informed Freedom's human resources director that his fingers and hand were numb. Freedom changed Buczko's job assignment to a nonrepetitive type of

---

[2] Because we reverse the circuit court's ruling, we need not address Manpower's further argument that the circuit court also erred by ordering Manpower to reimburse Freedom for the payment of Buczko's benefits.

work. Buczko worked this different job the following day, but the pain persisted.

The next day, January 6, Buczko reported to work, but could not perform his duties. This was the first time Buczko missed any work because of this problem. As a result, Freedom referred Buczko to Dr. J. A. Austin, a company physician at the Riverview Clinic. Buczko reported to Austin that he had experienced "increasing pain" about a week earlier. Austin made an initial diagnosis of carpal tunnel syndrome and indicated that surgery might be required. This diagnosis was later confirmed by Dr. David M. Huibregtse, another physician with the Riverview Clinic. Surgery, in fact, was performed on Buczko's right wrist on January 21, 1993.

On February 2, Huibregtse reported in response to Buczko's attorneys that Buczko had "significant carpal tunnel syndrome of the right hand." He also reported that Buczko's work at Freedom was a substantial factor contributing to Buczko's carpal tunnel condition and was also a substantial factor contributing to Buczko's disability. Huibregste confirmed these statements in a March 3 report filed with the Worker's Compensation Division of the Department of Industry, Labor and Human Relations. In this document, Huibregste stated, "[Buczko's] work performed at Freedom Plastics on January 4, 1993 was a substantial factor contributing to this disability and would be the last employer whose employment contributed to the disability."

Freedom then sought the opinion of Dr. J. Steven Moore, an assistant professor of occupational medicine at the Medical College of Wisconsin. After reviewing the relevant data, including a videotape of the deburring activity, Moore opined in relevant part, "[I]t is

unlikely that Mr. Buczko's performance of activities at work on a single day, January 4, 1993, materially aggravated, accelerated, or precipitated a condition that manifested a week prior." Finally, on April 7, 1994, Huibregtse retreated somewhat from his earlier opinion. In this report to Freedom's attorneys, Huibregtse stated:

> If the history that you present to me is accurate I certainly feel that the work exposure from November 19, 1992, until July [sic] 3, 1993, was the major contributing factor to the patient's carpal tunnel syndrome . . . .
>
> Consequently I agree that the work exposure from November 19, 1992 to January 3, 1993 was the material contributory causative factor of Mr. Buczko's carpal tunnel syndrome. The additional day working on the same machine had minimal contribution consequently is not a material contributory causative factor in the onset or progression of the carpal tunnel syndrome.

The ALJ determined that since Buczko did not experience any disability within the meaning of the worker's compensation law until January 4, 1993, that date was the time of Buczko's injury and Freedom was therefore the responsible employer. Upon further review at the instance of Freedom, LIRC upheld the ALJ's findings and conclusions.

Freedom petitioned the circuit court for judicial review. In its decision reversing the LIRC holding, the court said in relevant part:

> The evidence is undisputed that Drs. Austin, Huibregtse and Moore found the *materially contributing* cause occurred before December 30, 1992 and that the one day deburring on January 4, 1993 was

not a material contributing cause of Buczko's occupational disease . . . . There is no evidence this occupational disease can occur and develop to the stage it developed in Buczko in one day, unlike a traumatic injury . . . . Wisconsin law does not require one must be so disabled as to be unable to work before an occupational disease "injury" can occur and develop, later resulting in wage loss, and, the employee entitled to some Workers Compensation benefits.

Manpower appeals.

## DISCUSSION

### *Standard of Review*

We review LIRC's decision, not that of the circuit court. *See Langhus v. LIRC*, 206 Wis. 2d 493, 500, 557 N.W.2d 450, 454 (Ct. App. 1996). Neither we, nor the circuit court, weighs the evidence or passes upon the credibility of the witnesses. *See id.* LIRC'S findings of fact will be upheld on appeal if they are supported by credible and substantial evidence in the record. *See id.*; *see also* § 102.23(6), STATS.

We are not bound by LIRC's legal conclusions when the case is one of first impression. *See Langhus*, 206 Wis. 2d at 501, 557 N.W.2d at 454. However, we defer to LIRC's interpretation of a statute when: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is one of longstanding; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application

of the statute. *See id.* The legal principles which are at issue in this case, particularly the interpretation and application of § 102.01(2)(g), STATS., are not new to LIRC (or its predecessor, the Industrial Commission). In fact, one of the cases which the parties cite and debate dates back to 1953. *See Green Bay Drop Forge Co. v. Industrial Comm'n,* 265 Wis. 38, 60 N.W.2d 409, 61 N.W.2d 847 (1953). Thus, we will accord the proper deference to LIRC's legal conclusions in this case. With these principles in mind, we now address the relevant law and facts.

### *The Law and Facts*

■

Section 102.03(1), STATS., states that an employer is liable for worker's compensation benefits when: (1) an employee sustains an injury, (2) *at the time of injury* both the employer and employee are subject to the worker's compensation law, and (3) *at the time of injury* the employee is performing services related to the employment. Thus, "time of injury" is an important factor in determining liability.

Section 102.01(2)(g), STATS., speaks to this factor:

"[T]ime of injury," "occurrence of injury," or "date of injury" means:
 1. In the case of accidental injury, the date of the accident which caused the injury.
 2. In the case of disease, the date of disability or, if that date occurs after the cessation of all employment that contributed to the disability, the last day of work for the last employer whose employment caused disability.

The parties agree that Buczko's carpal tunnel syndrome condition was not an "accidental injury" under

subd. 1 of this statute. Thus, they further agree that Buczko's condition is an occupational disease which must be analyzed under subd. 2 of the statute. That subdivision sets out two scenarios for measuring the "time of injury" for an occupational disease: (1) the date of disability; or (2) if the date of disability occurs after the cessation of all employment that contributed to the disability, the date when the employee last worked for the employer who caused the disability. *See* § 102.01(2)(g)2, STATS.

Regarding this second disjunctive clause, we make some important observations. First, this scenario envisions that the employee is no longer engaged in the employment which *contributed* to the disability. While this language does not require that the employee must no longer be employed, it does require that the employee is no longer engaged *in that contributing employment.* Second, if that condition exists, then the employer which *caused* the disability is the responsible party and the last day worked for that employer is the date of disability.[3]

Although the parties agree that this is an occupational disease case which must be analyzed under subd. 2 of § 102.01(2)(g), STATS., they sharply disagree as to which clause of that subdivision governs. Manpower says that LIRC correctly determined that this case is governed by the first clause of subd. 2 because Buczko's date of disability, measured from the first time he was unable to work and sustained a wage loss, was January 6, 1993—the date Buczko reported to

---

[3] Thus, when looking to the cessation of employment, the inquiry is whether that employment *contributed* to the disability. If so, then the inquiry as to the last day worked is whether that employer *caused* the disability.

work at Freedom, but could not perform his duties and was referred to Austin.

Freedom, however, says that the second clause of subd. 2 applies because Manpower caused the disability. Freedom's argument, however, puts the cart before the horse. Even conceding that the Manpower employment precipitated the condition, the fact remains that Buczko's disability for purposes of the worker's compensation did not occur until after he was employed at Freedom. Thus, his disability did not occur "after the cessation of all employment that contributed to the disability." *See* § 102.01(2)(g)2, STATS. This is a requirement which must be satisfied before we look to whether the employer on the last day of work caused the disability. *See Green Bay Drop Forge,* 265 Wis. at 48, 60 N.W.2d at 413–14.

Freedom argues, however, that an employee may be entitled to disability benefits without having first incurred a wage loss. We agree. "[W]hile this 'wage-loss presumption' facilitates factual determinations made by the commission, actual wage loss is not a prerequisite to a finding of disability." *General Cas. Co. v. LIRC,* 165 Wis. 2d 174, 181, 477 N.W.2d 322, 325 (Ct. App. 1991). However, our agreement with Freedom on this point does not help its case. The supreme court has explained that "[it] is the actual or medical or pathological condition of the worker . . . that is controlling." *See Kohler Co. v. DILHR,* 42 Wis. 2d 396, 403–04, 167 N.W.2d 431, 434 (1969). This, of course, is the controlling question in many occupational disease cases.

"When did the occupational disease ripen into a disabling affliction?"[4] *Id.* at 400, 167 N.W.2d at 432.

That brings us to the factual issues in this case. Although the evidence before LIRC was in conflict, Huibregste's initial opinions were that the Freedom deburring employment activity was a substantial factor contributing to Buczko's carpal tunnel syndrome and disability. LIRC placed great stock in this evidence and discounted Huibregste's later retreat from this opinion. Based on this evidence, LIRC determined that Buczko's date of disability occurred during his employment with Freedom.[5]

Regarding Buczko's Manpower employment, the ALJ's findings, as adopted by LIRC, established that Buczko never complained about his condition and never lost any work time. This evidence supports LIRC's determination that Buczko did not suffer a disability while employed by Manpower because his carpal tunnel syndrome had not yet progressed to the point where it had "[ripened] into a disabling affliction." *See id.*

At first blush, it may appear unfair to obligate Freedom for Buczko's worker's compensation benefits in light of Buczko's single day of work as a Freedom employee. However, the supreme court spoke to the equities of this situation in a case involving a similar dispute between successive employers:

---

[4] Thus, Freedom is incorrect that an employee in Buczko's situation must have terminated his or her employment in order to obtain benefits for the disability.

[5] Although not expressly addressing Moore's opinion, it is obvious that LIRC, having accepted Huibregste's initial opinion, was also rejecting Moore's opinion.

The company that had insured the compensation liability at the time disability occurred is the one that must pay the compensation awarded. This rule will work no injustice to any individual carrier or employer because the law of averages will equalize burdens imposed by this act among the employers and the compensation insurers of this state.

*Employers' Mut. Liab. Ins. Co. v. McCormick*, 195 Wis. 410, 415–16, 217 N.W. 738, 740 (1928).

*By the Court.*—Order reversed.