SECURA INSURANCE and Stevenson's Trendsetters, Inc.,
Plaintiffs-Appellants,

v.

LABOR AND INDUSTRY REVIEW COMMISSION and Dale
Rice, Defendants-Respondents.

Court of Appeals

*No. 00–0303. Submitted on briefs July 31, 2000.—Decided
September 13, 2000.*

2000 WI App 237

(Also reported in 619 N.W.2d 626.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Mark P. McGillis* and *Richard A. Fortune* of *Richard A. Fortune & Associates, S.C.* of Racine.

On behalf of the defendant-respondent Labor and Industry Review Commission, the cause was submitted on the brief of *Lowell E. Nass*, assistant attorney general, and *James E. Doyle*, attorney general. On behalf of the defendant-respondent Dale Rice, the cause was submitted on the brief of *David A. Hudec* of *Gray, Hudec & Oleniczak, L.L.P.* of East Troy.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Stevenson's Trendsetters, Inc. and its insurer, Secura Insurance, appeal from a Labor and Industry Review Commission (LIRC) decision awarding Dale Rice permanent total disability worker's compensation benefits under WIS. STAT. § 102.44(2) (1997–98).[1] Rice's claim for § 102.44(2) lifetime benefits included both a scheduled injury to his left foot and a nonscheduled injury to his lower back. Secura contends that only the nonscheduled injury can support lifetime benefits under § 102.44(2) and that Rice failed to adequately separate his scheduled and unscheduled injuries; therefore, Rice failed to establish that his permanent total disability was caused by his

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

316

unscheduled injury. We conclude that § 102.44(2) lifetime benefits are warranted with a combination of scheduled and unscheduled injuries where the applicant establishes that a clear, ascertainable portion of the total disability is attributable to the unscheduled injury or injuries. We therefore affirm the LIRC decision and circuit court order.

## BACKGROUND

¶ 2.　Rice was injured on December 15, 1993, while working as a room installer for Stevenson's Trendsetters. Rice was injured when concrete leaked into his work boots, causing chemical burns to both of his feet. While the burns themselves eventually healed, they caused persistent, disabling pain in Rice's left foot. As a result of this disability, Rice developed difficulties with his gait, which produced musculoskeletal complications in his lower back. These complications have been diagnosed alternatively as reflex sympathetic dystrophy and/or complex regional pain syndrome. Rice continues to suffer from pain in his lower left extremity, low back and right shoulder, and experiences severe headaches.

¶ 3.　Rice initially brought a claim for permanent partial disability benefits. It was found that Rice suffered from an 8% permanent partial disability because of the injury to his left foot and a 2% permanent partial disability because of the injury to his back. Rice then brought a claim for loss of earning capacity for permanent total disability under WIS. STAT. § 102.44(6). A hearing was held on March 25, 1998, and on July 10, 1998, an ALJ awarded Rice permanent and total disability benefits.

¶ 4.　Secura appealed to LIRC. In a memorandum opinion issued on February 26, 1999, LIRC affirmed

317

the findings and order of the ALJ. Secura appealed to the circuit court on March 23, 1999. The circuit court affirmed LIRC's decision in a written decision on November 29, 1999, and in an order on December 10, 1999. Secura appeals this order.

## WORKER'S COMPENSATION FOR PERMANENT DISABILITY

¶ 5. Wisconsin worker's compensation benefits are principally governed by the Worker's Compensation Act (the Act), which is administered by the Department of Workforce Development (DWD). *See Mireles v. LIRC*, 2000 WI 96, ¶ 6, 237 Wis. 2d 69, 613 N.W.2d 875. The Act appears in ch. 102 of the Wisconsin Statutes and sets forth an intricate formula for initiating worker's compensation benefits; the Act is designed to compensate workers injured in the course of their employment. *See Mireles*, 2000 WI 96 at ¶¶ 6–7. Benefits payable under the Act are categorized as either temporary disability benefits or permanent disability benefits. *See id.* at ¶ 7.

¶ 6. Permanent disability benefits are divided into two separate categories: compensation for scheduled injuries and compensation for unscheduled injuries. *See id.* at ¶ 9. Scheduled injuries are set forth in WIS. STAT. § 102.52 and require the payment of benefits for a specific number of weeks as outlined in the statute. The schedules set forth in § 102.52 presume that a worker has lost an entire body part. *See Mireles*, 2000 WI 96 at ¶ 10. If a worker suffers a lesser injury, the worker is compensated based on how the injury compares to a complete loss of the body part. *See* WIS. STAT. § 102.55(3); *see also Mireles*, 2000 WI 96 at ¶ 10. WISCONSIN STAT. § 102.53 compels increases of awards for particular combinations of permanent disabilities.

Scheduled injury benefits presumably include compensation for an injured worker's loss of earning capacity. *See Mireles,* 2000 WI 96 at ¶ 11.

¶ 7.   Numerous injuries are not included in the statutory schedules. *See id.* at ¶ 13. These unscheduled injuries, predominantly injuries to the torso and head as well as mental injuries, typically require a more individualized assessment than scheduled injuries. *See id.* Back injuries are considered unscheduled injuries. *See id.* Permanent total disability because of an unscheduled injury or injuries results in lifetime benefits. *See* WIS. STAT. § 102.44(2); *see also Mireles,* 2000 WI 96 at ¶¶ 14, 54.

¶ 8.   With this as necessary background information, we now turn to the specifics of Secura's appeal.

## DISCUSSION

¶ 9.   WISCONSIN STAT. § 102.23 addresses judicial review of worker's compensation claims and states in relevant part:

(1)(a)   The findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive. The order or award granting or denying compensation, either interlocutory or final, whether judgment has been rendered on it or not, is subject to review only as provided in this section and not under ch. 227 or s. 801.02. . . .

. . . .

(6)   If the commission's order or award depends on any fact found by the commission, the court shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact. The court may, however, set aside the commission's order or award and remand the case to the commission if the commission's order or award depends on any material and

controverted finding of fact that is not supported by credible and substantial evidence.

¶ 10. This case requires the interpretation of WIS. STAT. § 102.44 as applied to a set of uncontested facts. "Where the statutory language is clear, no judicial rule of construction is permitted, and we must arrive at the intent of the legislature by giving the language [of the statute] its ordinary and accepted meaning." *Threshermens Mut. Ins. Co. v. Page*, 217 Wis. 2d 451, 458, 577 N.W.2d 335 (1998) (citation omitted). While the interpretation and application of statutes is normally a question of law for the courts, *see id.*, an equally important principle is deference that may be due to an administrative agency in recognition of the agency's expertise and experience. *See Barron Elec. Coop. v. PSC*, 212 Wis. 2d 752, 760, 569 N.W.2d 726 (Ct. App. 1997). The mid-level "due weight" deference is appropriate when the agency's expertise in interpreting a statute is no better than that of a court, but the agency does have knowledge and skill in the area, the legislature has charged the agency with the enforcement of the statute in question and the agency's interpretation is equally reasonable to any other interpretation. *See id.* at 762–63 (citations and footnote omitted). We are satisfied that due deference is appropriate here and agree with LIRC's interpretation of § 102.44 and the application of the statutory language to the known facts.

¶ 11. Rice seeks benefits based upon a combination of scheduled and unscheduled injuries under WIS. STAT. § 102.44(2), which grants lifetime benefits to workers who are permanently and totally disabled. The essence of Secura's argument on appeal attacks the sufficiency of the evidence supporting the award of

§ 102.44(2) benefits. Secura argues that the evidence fails to adequately distinguish between Rice's scheduled and nonscheduled injuries, and that the evidence fails to establish that Rice's nonscheduled injury caused his permanent and total disability. Secura further argues that Rice must dichotomize between scheduled and unscheduled injuries and must clearly demonstrate that the unscheduled injury alone prevents his return to work. Secura misunderstands the appropriate standard.

¶ 12. WISCONSIN STAT. § 102.44(2), the statute under which Rice seeks benefits, must be read in context with the rest of the Act. *See Mireles*, 2000 WI 96 at ¶ 56. WISCONSIN STAT. § 102.43, entitled "Weekly compensation schedule," provides directions about the payment of benefits and covers partial, temporary and permanent disabilities. Section 102.44 limits § 102.43; subsec. (2) of § 102.44 provides:

> In case of permanent total disability aggregate indemnity shall be weekly indemnity for the period that the employe may live. Total impairment for industrial use of both eyes, or the loss of both arms at or near the shoulder, or of both legs at or near the hip, or of one arm at the shoulder and one leg at the hip, constitutes permanent total disability. This enumeration is not exclusive, but in other cases the department shall find the facts.

Sec. 102.44(2).

¶ 13. WISCONSIN STAT. § 102.44(2) lists several combinations of scheduled injuries that constitute permanent total disability but also concludes: "This enumeration is not exclusive, *but in other cases* the department shall find the facts." *Id.* (emphasis added). In *Mireles*, the Wisconsin Supreme Court concluded

321

that the "other cases" of permanent total disability could include a combination of scheduled and unscheduled injuries. *See Mireles*, 2000 WI 96 at ¶¶ 59, 71. Therefore, an applicant with both scheduled and unscheduled injuries can seek lifetime benefits under § 102.44(2).

¶ 14. WISCONSIN STAT. § 102.44(4) states that "[w]here the permanent disability is covered by ss. 102.52, 102.53 and 102.55, such sections shall govern . . . ." Therefore, WIS. STAT. §§ 102.52, 102.53 and 102.55 must be examined to determine if they govern an applicant's claim instead of § 102.44. *See Mireles*, 2000 WI 96 at ¶ 60.

¶ 15. WISCONSIN STAT. § 102.52 is the "Permanent partial disability schedule" and contains the full list of *scheduled* injuries. *See Mireles*, 2000 WI 96 at ¶ 60. A claim for permanent total disability with *unscheduled* injuries is not covered by § 102.52 because § 102.52 is for *scheduled* injuries. *See Mireles*, 2000 WI 96 at ¶ 60.

¶ 16. WISCONSIN STAT. § 102.53 relates to "Multiple injury variations." Its introductory clause begins: "In case an injury causes more than one permanent disability specified in ss. 102.44 (3), 102.52, and 102.55 . . . ." Section 102.53. Referenced WIS. STAT. § 102.44(3) pertains to permanent *partial* disability, not to *total* disability. *See Mireles*, 2000 WI 96 at ¶ 61. Both referenced WIS. STAT. §§ 102.52 and 102.55 deal exclusively with *scheduled* injuries and combinations of *scheduled* injuries, not *unscheduled* injuries. *See Mireles*, 2000 WI 96 at ¶ 61.

¶ 17. Based on the foregoing analysis, the *Mireles* court concluded that WIS. STAT. §§ 102.52, 102.53 and 102.55 do not cover a claim for permanent total disability based upon a combination of scheduled and unscheduled injuries. *See Mireles*, 2000 WI 96 at

¶ 63. The court found that Mireles could qualify for permanent total disability benefits under WIS. STAT. § 102.44(2) based upon the combination of her scheduled and unscheduled injuries if she could prove such disability to DWD. *See Mireles*, 2000 WI 96 at ¶ 71. Here, we have a situation virtually identical to *Mireles*— an application for permanent total disability under § 102.44(2) based upon a combination of unscheduled and scheduled injuries. Consequently, we must arrive at the same conclusion for Rice.

¶ 18.   Secura relies heavily on *Langhus v. LIRC*, 206 Wis. 2d 494, 557 N.W.2d 450 (Ct. App. 1996). *Langhus* does not support the arguments Secura submits to this court.

¶ 19.   In *Langhus*, the applicant claimed permanent total disability based on back, leg and shoulder injuries. *See id.* at 497. LIRC denied Langhus's claim for permanent total disability benefits because he could not demonstrate what portion of his disability could be attributed to his unscheduled back injury. *See id.* at 507. The *Langhus* court noted that

> LIRC's interpretation does not preclude a claimant who can prove total disability, stemming from both scheduled and unscheduled injuries, from receiving lifetime benefits. Section 102.44(2), STATS., specifically provides that certain combinations of scheduled injuries are deemed to constitute permanent total disability. In other situations, DWD is directed to "find the facts." There is no reason, therefore, that a claimant with both scheduled and unscheduled injuries could not establish facts that would allow LIRC to award benefits for permanent total disability under § 102.44(2). The burden of making that showing, however, rests on the claimant.

*Id.* at 505–06 n.9.

¶ 20.  *Langhus* was not overruled by *Mireles*, and, in fact, the *Mireles* court determined that it had reached the same conclusion as *Langhus. See Mireles*, 2000 WI 96 at ¶ 63. The *Mireles* court stated that in *Langhus*, "[p]resumably, LIRC wanted Langhus to show that his disability was caused in part by an unscheduled injury, so that compensation for loss of earning capacity was not awarded for an injury caused either significantly or wholly by a scheduled injury." *Mireles*, 2000 WI 96 at ¶ 68. The *Mireles* court noted that LIRC acted within its authority by placing the burden on the applicant to establish that an ascertainable portion of the total disability was attributable to an unscheduled injury. *See id.*

¶ 21.  A review of the record here indicates that Rice has established that a clear, ascertainable portion of his injury is attributable to an unscheduled injury. The circuit court's well-reasoned and well-supported decision accurately sets forth the appropriate analysis and cites ample evidence of the debilitating effects of Rice's unscheduled injury.

¶ 22.  Again, "[t]he findings of fact made by the commission acting within its powers shall . . . be conclusive." WIS. STAT. § 102.23(1)(a). At the hearing before the ALJ, Dr. Jeffrey Fitzhum, Rice's doctor, discussed in detail the pain syndrome which affects Rice's entire body. Rice has been diagnosed with reflex sympathetic dystrophy and/or complex regional pain syndrome, a progressive disease characterized by pain out of proportion to the injury. According to Fitzhum, complex regional pain syndrome "involves the central nervous system and changes how the nervous system processes incoming information." Fitzhum testified that "[t]he most typical progression [of complex regional pain syn-

drome] is a proximal spread of symptoms with increasing distance from the original site of injury looking more and more like musculoskeletal complaints." The pain syndrome persists indefinitely. Fitzhum testified that this disease presents itself in Rice with foot pain, radiating into his back and neck. Rice's back problems are specifically concentrated in his "right greater trochanter and region of the gluteus medius," or his low back area. The lower back pain appears to be muscular in nature. Severe frontal and suboccipital headaches are also a persistent problem for Rice. Fitzhum testified that Rice's lower back problems resulted from his change in gait because of his inability to put weight on his left foot. Fitzhum testified that the entire pain complex disables Rice and causes low back pain; Fitzhum further testified that the back problem is "clearly related to a reasonable degree of medical probability to complex regional pain syndrome." Fitzhum also testified that Rice took substantial amounts of pain medication with side effects including sedation, constipation, nausea, itching and dizziness. Fitzhum stated that as a result of complex regional pain syndrome, Rice was physically restricted to perform no more than four hours per day of less than sedentary work.

¶ 23.  Fitzhum's testimony established that an ascertainable portion of Rice's injury is attributable to his unscheduled back injury. By adopting and upholding the findings of the ALJ, LIRC found Fitzhum's opinion to be both credible and substantial. Our role is to review the record to locate credible and substantial evidence that supports the commission's decision, not to weigh the opposing evidence. *See Vande Zande v. DILHR*, 70 Wis. 2d 1086, 1097, 236 N.W.2d 255 (1975).

Here, there is credible and substantial evidence supporting LIRC's decision.

¶ 24. In sum, pursuant to *Mireles* and *Langhus*, Rice is entitled to WIS. STAT. § 102.44(2) lifetime benefits for a combination of scheduled and unscheduled injuries because he has established that a clear, ascertainable portion of his disability is attributable to his unscheduled back injury.

## CONCLUSION

¶ 25. Pursuant to WIS. STAT. § 102.44(2), permanent total disability can be awarded because of a combination of scheduled and unscheduled injuries, provided the applicant establishes that a clear, ascertainable portion of the total disability is attributable to the unscheduled injury or injuries. Here, Rice has done so. The circuit court's order is affirmed.

*By the Court.*—Order affirmed.