Gary J. WHITE, Plaintiff-Appellant,

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Olympic Wall Systems, Inc. and Transportation Insurance Co., Defendants-Respondents.

Court of Appeals

*No. 00–0855. Submitted on briefs August 23, 2000.—Decided October 18, 2000.*

## 2000 WI App 244

(Also reported in 620 N.W.2d 442.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas C. Wilkoski* of *Law Offices of Lucas & Wilkoski* of West Allis.

On behalf of the defendants-respondents, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Stephen M. Sobota*, assistant attorney general.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J. The principal issue in this worker's compensation case is whether the first clause of WIS. STAT. § 102.01(2)(g)2 (1997–98)[1] relieves an employee of the burden to prove that an occupational disease stemmed from the employment with the employer against whom the claim is made. The Labor and Industry Review Commission (LIRC) determined that the statute required the claimant, Gary J. White, to establish such linkage between his occupational back disease and his employment with Olympic Wall Systems, Inc. (Olympic). LIRC further held that the evidence submitted by White did not satisfy this burden.

¶ 2. White's primary argument is that LIRC misapplied WIS. STAT. § 102.01(2)(g)2 which sets out how the time, occurrence or date of an injury is determined. White contends that since he was still employed by Olympic, he was required under the first scenario of this statute to prove only that he had an occupational disease and the date of his disability. He argues that LIRC erred by applying the second scenario of the statute which fixes the date of disability at "the last day of work for the last employer whose employment caused

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

disability." *Id*. Alternatively, White argues that even if LIRC correctly applied the statute, he met his burden of proof to show that his employment at Olympic contributed to his disability based on a medical report submitted by his treating physician.

¶ 3.   We reject White's argument that he was not required to establish a connection between his disability and his employment with Olympic under the first scenario of the statute. We further uphold LIRC's conclusion that the medical report offered by White failed to establish such a connection. Consequently, we affirm the judgment of the circuit court.

## FACTS

¶ 4.   The underlying facts are undisputed. White is a drywaller by trade whose work experience dates back to 1966. Beginning in 1982, White worked exclusively as a drywaller. During this time, White worked for many different employers, receiving his work assignments through his union. At the hearing before the administrative law judge (ALJ), White testified that depending upon the type of job, he would be working with sheets of drywall that weighed anywhere from 80 to more than 100 pounds. According to White, this heavy work contributed to recurring back problems.

¶ 5.   White testified that his history of back problems began in the late 1960's. While he worked as a drywaller, he would experience flare-ups in his back about twice a year that would require him to miss one or two weeks of work each time. The only documented incident involving White's back was an October 1991 injury that occurred while he was working for another company. On that occasion, White aggravated his back while carrying sheets of drywall and he was unable to work for two months. He was treated with medication

and received physical therapy. As a result, White received temporary total disability worker's compensation.

¶ 6. White was employed by Olympic for a total of thirty weeks during 1994 and 1995. His compensation claim against Olympic initially arose out of an unrelated matter—a shoulder injury he suffered on the job on August 17, 1995. He was treated conservatively for this injury with medication and therapy and was placed under lifting restrictions. During the fall of 1995, White tried, but was unable, to return to normal duty with Olympic. White's last day of work for Olympic was November 4, 1995. White was awarded worker's compensation benefits based on a three percent loss of use of his shoulder.

¶ 7. White returned to his treating physician on January 15, 1996, and reported that his shoulder was feeling much better. He asked to be released to full duty because the lifting restrictions prevented him from returning to his normal drywalling work. At that time, White's physician reported that White had full range of motion and good strength in his shoulder. As a result, White was cleared to return to normal duty on January 22, 1996. White, however, never resumed working for Olympic.

¶ 8. Almost a year later, on January 9, 1997, White had his shoulder examined by Dr. Harvey Kohn. Based on this examination, Kohn estimated White's shoulder disability at twenty percent. As a result, White sought additional benefits for his shoulder disability. Later, White modified his application to include the claim at issue in this case—an alleged occupational back disease. The application requested temporary total disability from December 25, 1995, to July 29, 1997, and an eight percent permanent partial disabil-

ity for his back. White's claim for his back condition was based on a further examination by Dr. Stephen Delahunt conducted on April 10, 1997.

¶ 9. Following a hearing, the ALJ issued a written decision granting White's claim for additional benefits related to his shoulder injury.[2] In addition, the ALJ rejected White's occupational back disease claim based on White's failure to maintain his burden of proof. Specifically, the ALJ noted that White had a history of back problems that went back many years and that Delahunt's report "does not give the opinion that the employment at [Olympic] changed or affected [White's] back problem."

¶ 10. White appealed the ALJ's decision regarding his occupational back disease claim to LIRC. LIRC upheld the ALJ's decision and adopted his findings and order as its own. In addition, by a memorandum opinion, LIRC cited the failure of Delahunt's report to opine that White's employment with Olympic "constituted a materially contributory causative factor in the onset or progression of the alleged occupational back disease."

¶ 11. White followed with an appeal of LIRC's decision to the circuit court. After reviewing the record and briefs submitted by the parties, the court issued an order affirming LIRC's decision. The court agreed with LIRC's reading of WIS. STAT. § 102.01(2)(g)2 that White had the burden of proving through medical evidence that his employment with Olympic contributed to his occupational back disease. In addition, the court upheld the LIRC determination that Delahunt's report failed to satisfy this burden. White further appeals to this court.

---

[2] This award, however, was less than that sought by White, and White does not appeal this lesser award.

## STANDARD OF REVIEW

■

¶ 12. On appeal, we review the decision of LIRC rather than the decision of the circuit court. *See Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79 (Ct. App. 1981). Our role is not to weigh the evidence or to determine the credibility of the witnesses, and as such, we will uphold LIRC's findings of fact so long as they are supported by credible and substantial evidence in the record. *See Langhus v. LIRC*, 206 Wis. 2d 494, 501, 557 N.W.2d 450 (Ct. App. 1996); WIS. STAT. § 102.23(6). In the case before us, the facts are not in dispute.

¶ 13. After the facts are established, we turn to their application to the statute, which is a question of law. *See Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773 (1989). Depending on the level of expertise an agency has acquired in the area in question, we may defer to its legal determination. *See Barron Elec. Coop. v. PSC*, 212 Wis. 2d 752, 760–64, 569 N.W.2d 726 (Ct. App. 1997). Our supreme court has identified three levels of deference to agency decisions: great weight deference, due weight deference and de novo review. *See UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996). Which level is appropriate "depends on the comparative institutional capabilities and qualifications of the court and the administrative agency." *Id.* (citation omitted). Due weight deference is appropriate "when the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court." *Id.* at 286.

¶ 14. In this case, both parties agree that due weight deference is appropriate here. We will accept that agreement for purposes of this case. Thus, we will sustain LIRC's interpretation of the statutes if it is reasonable—even if another interpretation is equally reasonable—but will overrule it if another interpretation is more reasonable. *See Barron Elec. Coop.*, 212 Wis. 2d at 762–63.

## DISCUSSION

¶ 15. White's argument is premised upon WIS. STAT. § 102.01(2)(g), which reads in relevant part:

(g) Except as provided in s. 102.555 . . . "time of injury", "occurrence of injury", or "date of injury" means:

. . . .

2. In the case of disease, the date of disability or, if that date occurs after the cessation of all employment that contributed to the disability, the last day of work for the last employer whose employment caused disability.

¶ 16. White observes that in *North River Insurance Co. v. Manpower Temporary Services*, 212 Wis. 2d 63, 568 N.W.2d 15 (Ct. App. 1997), this court stated that WIS. STAT. § 102.01(2)(g)2 envisions "two scenarios for measuring the 'time of injury' for an occupational disease: (1) the date of disability; or (2) if the date of disability occurs after the cessation of all employment that contributed to the disability, the date when the employee last worked for the employer who caused the disability." *North River*, 212 Wis. 2d at 71. Regarding the second scenario, we observed:

[T]his scenario envisions that the employee is no longer engaged in the employment which *contributed* to the disability. While this language does not require that the employee must no longer be employed, it does require that the employee is no longer engaged *in that contributing employment.* Second, if that condition exists, then the employer which *caused* the disability is the responsible party and the last day worked for that employer is the date of disability.

*Id.* (footnote omitted).

¶ 17.    White says that LIRC erroneously analyzed this case under the second scenario of WIS. STAT. § 102.01(2)(g)2 because his employment with Olympic had not ceased. Thus, he reasons that LIRC should not have inquired as to "the last employer whose employment caused disability" under this portion of the statute. Instead, White says that this case falls under the first scenario of the statute. And since that scenario speaks only of "disease" and "the date of disability," White argues that he was not required to show any connection between his disability and his employment with Olympic.

¶ 18.    Implicit in White's argument is his assumption that WIS. STAT. § 102.01(2)(g)2 represents a comprehensive statement as to a claimant's burden of proof. We reject that assumption. The statute is entitled "Definitions" and it sets out the meanings of various terms that appear thereafter in the worker's compensation laws. As such, the statute does not purport to globally recite the elements of a worker's compensation claim or the corresponding burden of proof. Rather, the statute simply sets out a mechanism for fixing the time, occurrence or date of an injury *for*

*purposes of identifying the proper employer against whom a claim may be made.*

¶ 19.   That was the very matter at issue in *North River* where the former employer and the most recent employer contended that the other was responsible for the employee's occupational disease. *See North River*, 212 Wis. 2d at 65. Speaking to the second scenario of WIS. STAT. § 102.01(2)(g)2, we concluded that the employee's disability did not occur "after the cessation of all employment that contributed to the disability." *North River*, 212 Wis. 2d at 72. In light of that, we further said, "This is a requirement which must be satisfied before we look to whether the employer on the last day of work caused the disability." *Id.* From this language, White extrapolates that we were saying just the opposite—that causation need not be proven—under the first scenario of the statute. As further support, White notes that the first scenario language of the statute speaks only of "disease" and "date of disability" and not of employment which contributed to or caused the disability.

¶ 20.   We disagree with White's approach for two reasons. First, *North River* itself implicitly rejects it. Having determined that the second scenario of WIS. STAT. § 102.01(2)(g)2 did not apply because the disability did not occur "after the cessation of all employment that contributed to the disability," *North River*, 212 Wis. 2d at 72, we nonetheless went on to assess whether the evidence supported the LIRC determination that the employee's latest employment was a substantial factor contributing to the disability. *See id.* at 73. If, as White contends, such linkage between the disability and the employment was not required, we would not have conducted that inquiry.

¶ 21. Second, and more importantly, White's argument runs counter to some fundamental notions about worker's compensation law. We start with the burden of proof:

> It is an elementary principle of law that the applicant has the burden of proof in a workmen's compensation case, and if the evidence before the Industrial Commission is sufficient to raise in the mind of the commission a *legitimate doubt* as to the existence of facts necessary and essential to establish a claim for compensation, it becomes the duty of the commission to deny the application on the ground that the claimant did not sustain his [or her] burden of proof.

*Bumpas v. DILHR*, 95 Wis. 2d 334, 342–43, 290 N.W.2d 504 (1980) (citation omitted). *See also Leist v. LIRC*, 183 Wis. 2d 450, 457, 515 N.W.2d 268 (1994).

¶ 22. In determining the elements of a viable worker's compensation claim to which this burden applies, we look to WIS. STAT. § 102.03, entitled "Conditions of liability." Subsection (1) provides for employer liability for worker's compensation benefits:

> (a) Where the employe sustains an injury.
> (b) Where, at the time of the injury, both the employer and employe are subject to the provisions of this chapter.
> (c) 1. Where, at the time of the injury, the employe is performing service growing out of and incidental to his or her employment.
> . . . .
> (e) *Where the accident or disease causing injury arises out of the employe's employment.* (Emphasis added.)

515

¶ 23. White would have us read this causation element out of worker's compensation law where the claim is for an occupational disease under the first scenario envisioned by WIS. STAT. § 102.01(2)(g)2. We see no basis for such a drastic departure from established law. Again, the statute merely prescribes a mechanism for identifying the responsible employer. It does not abrogate the condition of liability set out in WIS. STAT. § 102.03(1)(e) that a claimant must prove that the accident or disease arose out of that employment.

¶ 24. That brings us to White's alternative argument that even if he was required to prove the linkage between his occupational disease and his employment with Olympic, he has satisfied that burden. Here, the medical report of Delahunt is crucial because it represents the only evidence proffered by White in support of his claim that his employment with Olympic contributed to his back disease. In his report, Delahunt recited White's medical history and his observations from his examination of White. Delahunt concluded that White has "advanced degeneration of the L5-S1 intervertebral disc" and that "[d]ue to the intractability and severity of his symptoms" surgery would be appropriate. This portion of the report clearly establishes White's occupational back disease, and LIRC does not dispute this point.

¶ 25. The portion of Delahunt's report that purports to establish the causal link between White's occupational back disease and his employment with Olympic reads as follows:

His current back disability appears to be related to his long work exposure as a drywaller. The symp-

tomatology initially did appear while he was at work. It is my opinion that because of the prolonged exposure to the heavy work of a drywaller that he has this current low back disability.

¶ 26.   White argues that these statements satisfied his causation burden because he had worked for Olympic for at least eight months prior to his last day of employment. He reasons that "[t]his eight months of employment with Olympic *had to contribute* to [his] disease." (Emphasis added.) But that is not what the report says; instead, that is White's interpretation of the report. LIRC held that Delahunt's report is deficient because it does not specifically tie White's occupational back disease to his employment with Olympic. Or, at best, it is ambiguous on this question. We agree. As we have noted, evidence is insufficient if it raises in the mind of LIRC a legitimate doubt as to the existence of a fact necessary and essential to establish a claim for compensation. *See Bumpas*, 95 Wis. 2d at 342–43. Stated differently, but to the same effect, a worker's compensation award may not be based upon findings that are mere possibilities or speculation. *See Franckowiak v. Industrial Comm'n*, 12 Wis. 2d 85, 90, 106 N.W.2d 51 (1960). Here, the ambiguity in Delahunt's report allows for a "legitimate doubt" on the question of causation. Any award on the basis of this report would have constituted a possibility or speculation. Under such conditions, it was LIRC's duty to dismiss White's worker's compensation claim. *See Bumpas*, 95 Wis. 2d at 342–43.

## CONCLUSION

¶ 27.   We hold that the first scenario of WIS. STAT. § 102.01(2)(g)2 does not eliminate the need for proof

that the accident or disease arose out of the employee's employment pursuant to WIS. STAT. § 102.03(1)(e). We further hold that LIRC's determination that Delahunt's report failed to satisfy White's burden of proof as to causation was reasonable.

*By the Court.*—Judgment affirmed.