BROWN COUNTY ATTORNEYS ASSOCIATION, Petitioner-
Appellant,

v.

BROWN COUNTY, Respondent-Respondent.†

Court of Appeals

*No. 91–3064. Submitted on briefs May 18, 1992.—Decided June
23, 1992.*

(Also reported in 487 N.W.2d 312.)

†Petition to review denied.

737

738

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Frederick J. Mohr* of *Frederick J. Mohr, S.C.* of Green Bay.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Kenneth J. Bukowski,* corporation counsel, Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   The Brown County Attorneys Association appeals a declaratory judgment in favor of Brown County. The judgment declared that the following were not fringe benefits within the meaning of sec. 978.12(6), Stats.: Continuing legal education seminar fees and bar dues; mileage reimbursement; beeper pay; and the casual day/disability plan. The attorneys argue that all four items are fringe benefits within the meaning of sec. 978.12(6). We conclude that the items in dispute are fringe benefits as contemplated by sec. 978.12(6). Accordingly, the judgment is reversed.

The Brown County Attorneys Association is an unincorporated labor association of the Brown County assistant district attorneys. Prior to January 1, 1990, assistant district attorneys were employees of the county in which they worked. On January 1, 1990, the assistant district attorneys became state employees under ch. 978, Stats. This dispute arises from the election made available to the attorneys under sec. 978.12(6) to be covered by either the state's fringe benefit plan or the county's fringe benefit plan. The attorneys here opted to continue county fringe benefits. The county, however, refused to pay the continuing legal education fees and bar dues; mileage reimbursement; beeper pay; and the casual day

disability plan on the basis that they are not fringe benefits within the meaning of sec. 978.12(6).

This question involves the interpretation of sec. 978.12(6), Stats. Interpretation of a statute presents a question of law that we decide without deference to the trial court. *Brandt v. LIRC,* 160 Wis. 2d 353, 361, 466 N.W.2d 673, 676 (Ct. App. 1991). The aim of statutory construction is to discern the legislative intent, and the primary source to be used is the statutory language. *State v. Eichman,* 155 Wis. 2d 552, 560, 456 N.W.2d 143, 146 (1990). The statute must be interpreted on the basis of its plain meaning and, unless there is an ambiguity, the plain meaning must be followed. *State v. Livingston,* 159 Wis. 2d 561, 573, 464 N.W.2d 839, 844 (1991).

Section 978.12(6), Stats., authorizes assistant district attorneys

> who received any form of fringe benefits other than a retirement, deferred compensation or employe-funded reimbursement account plan as a county employe, as defined by that county pursuant to the county's personnel policies, or pursuant to a collective bargaining agreement in effect on January 1, 1990, or the most recent collective bargaining agreement covering represented employes who are not covered by such an agreement, may elect to continue to be covered under all such fringe benefit plans provided by the county after becoming a state employe.

First, we address the county's argument that the seminar fees and bar dues are not covered under sec. 978.12(6), Stats., because they are not defined pursuant to the county personnel policies or in a collective bargaining agreement. The most recent collective bargaining agreement between the county and the attorneys

741

terminated December 31, 1989.[1] That collective bargaining agreement contained the following provision:

> The County agrees to continue employee benefits or other amenities existing as of December 31, 1979, not mentioned herein but established by practice or policy with the knowledge and/or tacit consent of the County, for the life of this agreement.

Uncontroverted testimony demonstrated that the county historically reimbursed both seminar fees and bar dues until the attorneys became state employees. This policy had been in existence as of December 31, 1979. Therefore, by reference in the above provision, these fringe benefits were incorporated in the collective bargaining agreement as required under sec. 978.12(6).

Beeper pay, the next item in dispute, refers to the county's policy of compensating the attorney assigned to be on call through use of a beeper during evenings, holidays and weekends, to respond to requests from the sheriff for warrants, accidents and provide other information. The attorney carrying the beeper was compensated at a rate of $20 per evening, $50 per holiday and $100 per weekend. The county argues that beeper pay is not a fringe benefit because it is actual compensation for work done.

Because the term "fringe benefit" is not defined in sec. 978.12(6), Stats., we give it its ordinary and accepted meaning. *Wilson v. Waukesha County,* 157 Wis. 2d 790, 795, 460 N.W.2d 830, 832 (Ct. App. 1990). This meaning may be ascertained from a recognized dictionary. *Id. Webster's Third New Int'l Dictionary* 912 (Unabr. 1976), defines "fringe benefit" as: "[A]n employment benefit . . . granted by an employer that involves a

---

[1]The attorneys became state employees on January 1, 1990.

money cost without affecting basic wage rates." All fringe benefits, as a benefit to the employee at a money cost to the employer, are essentially "compensation" for work done. The question, consequently, is not whether the benefit is compensation, but, rather, whether it is compensation that affects basic wage rates.

Wearing a beeper is not one of the required duties for which an assistant district attorney is paid his regular salary. Because each attorney may at some time be called upon to sacrifice an evening, a holiday or a weekend, above and beyond the regular work hours for which a salary is paid, the county set up a system whereby that person would receive an extra benefit, separate and distinct from basic wage rates. Merely because the extra benefit compensates for services performed does not defeat its qualification as a fringe benefit. Because beeper pay is compensation for performing duties not paid for in the attorney's regular salary, it qualifies as a fringe benefit under sec. 978.12(6), Stats.

The county also argues that because sec. 230.12(1)(c)2, Stats., authorizes the secretary to establish a plan of extra compensation for assistant district attorneys who perform on-call duty, compensation for these duties is the sole responsibility of the state and not the county. This argument ignores the election made available to the attorneys under sec. 978.12(6), Stats. Whether the secretary establishes a rate of compensation for on-call duty does not change the fact that as an electable fringe benefit, the attorneys may choose to forego any such compensation by the state and instead choose the plan established by the county.

We next consider whether reimbursement for mileage is a fringe benefit. Mileage reimbursement is payment by the county for an attorney's use of his personal vehicle to perform county duties. The county, as reflected in the collective bargaining agreement, agreed that the use of one's personal vehicle to perform professional responsibilities was not a responsibility that was accounted for in the employee's basic wage rate. Therefore, the county provided for the employees to be reimbursed for the cost of using their own vehicles for job-related purposes. Being reimbursed for the use of one's car is a benefit; it involves a money cost to the employer, and it does not affect basic wage rates. Therefore reimbursement for mileage is a fringe benefit within the meaning of sec. 978.12(6), Stats.

Finally, we address whether the casual day/disability plan is a fringe benefit. The argument regarding this benefit centers on the casual day program provided by the county whereby the attorneys are allotted five days every year to use in any manner that they choose. The employee may use those days to conduct personal business, as extra sick days or vacation days, or the employee may choose not to take those days off and instead be paid extra cash for them.

The county does not dispute that the casual days are fringe benefits as that term is commonly understood. Instead it argues that casual days are not an electable fringe benefit under sec. 978.12(6), Stats., because sec. 978.12(3) preempts the election available under subsec. (6). Section 978.12(3) provides that the attorneys shall have their sick leave accrued with the state. Therefore, subsec. (3) precludes an attorney from electing to have his sick leave accrued under the county's program.

744

The county argues that the casual days constitute sick leave, and, therefore, under subsec. (3) the attorneys cannot elect this fringe benefit. We are not persuaded that the casual days allotted by Brown County to the attorneys are the equivalent of sick leave. Casual days are provided for in the collective bargaining agreement as something distinct from sick leave. Merely because an employee may choose to use a casual day as a sick day does not make it the equivalent of sick leave. In order to take sick leave, an employee must be sick. A casual day, however, can be used for whatever reason the employee wants. Because casual days are not the equivalent of sick leave, we conclude that subsec. (3), does not prevent the attorneys from electing this county benefit.[2]

*By the Court.*—Judgment reversed.

[2]Although the county analogizes the preemption of sick leave in sec. 978.12(3), Stats., to the preemption of annual leave in sec. 978.12(4), it makes no claim that the casual days are preempted as annual leave. Consequently, we do not address this issue.