DODGELAND EDUCATION ASSOCIATION, Petitioner-Appellant,†

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION and Dodgeland School District, Respondents-Respondents.

Court of Appeals

*No. 00–0277. Oral argument September 14, 2000.—Decided November 30, 2000.*

## 2000 WI App 260

(Also reported in 623 N.W.2d 159.)

†Petition to review granted.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Melissa A. Cherney* and *Bruce Meredith* of *Wisconsin Education Association Council*, Madison.

On behalf of the respondents-respondents, the cause was submitted on the briefs of *John D. Niemisto,* assistant attorney general, and *James E. Doyle,* attorney general; and *Kirk D. Strang* of *Lathrop & Clark, LLP*, Madison.

Before Roggensack and Deininger, JJ., and William Eich, Reserve Judge.

¶ 1. DEININGER, J.  The Dodgeland Education Association appeals an order in which the circuit court affirmed a ruling of the Wisconsin Employment Relations Commission. The commission determined that the Dodgeland School District had submitted a "qualified economic offer," and therefore that, although the district had a duty to bargain with the association regarding the economic impact of a change in teachers'

preparation time, the impact issue could not be arbitrated. The association claims that the commission erred in concluding that the district had made a "qualified economic offer" because preparation time is a "fringe benefit" which must be maintained in order to have a "qualified economic offer." We conclude that we must accord the commission's interpretation of WIS. STAT. § 111.70(1)(nc) (1997–98)[1] at least due weight deference, and under that standard of review, we affirm the commission's ruling.

## BACKGROUND

¶ 2. The facts which spawned the present litigation are not in dispute. On April 1, 1996, the district and the association entered into a memorandum of understanding regarding teachers' preparation time. It provided that "absent mutual agreement by the parties to modify the number of preparation periods," middle school and high school teachers were to have two preparation periods per day, and elementary teachers were to have them during art, music and physical education classes and at lunch. The parties further agreed in the memorandum that "the current practice as set forth . . . shall continue in effect until June 30, 1997," and that "[a]lthough agreed upon as a practice to continue through June 30, 1997, the Collective Bargaining Agreement will not reflect the above references to preparation periods."

¶ 3. The commission found that it was the district's "general expectation and teachers' general practice" that preparation time was to be used for such

---

[1] The relevant provisions of WIS. STAT. § 111.70, the Municipal Employment Relations Act, are quoted and discussed below. All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

purposes as: lesson planning, grading papers, meeting with students, making phone calls to parents, and numerous other activities auxiliary to a teacher's classroom duties. The commission also found, however, that "a teacher performing in a satisfactory manner is not subject to discipline if he/she chooses to accomplish the above tasks at times other than preparation periods and uses preparation periods as break time."

¶ 4.   The 1995–97 contract between the district and the association contained provisions for the compensation of teachers who were "assigned to cover other classes during their regularly assigned preparation periods." Basically, the compensation specified was the "per period" rate provided in the contract for "substitute pay."

¶ 5.   The district notified the association by letter in December 1997 that "since the Memorandum of Understanding regarding teacher preparation time ended June 30, 1997, there is no longer any guarantee of prep time." The letter further advised the association that the district intended "to discontinue the alleged teacher prep time past practice commencing with the next semester." During negotiations for the parties' 1997–99 contract, the association submitted a "preliminary final offer" which called for the "[c]ontinuation of preparation time memorandum." The district's "preliminary final offer" for the 1997–99 contract proposed to "maintain all fringe benefits and its percentage contribution toward the cost thereof" and to "provide the minimum increase in salary which Sec. 111.70(1)(nc)2, Stats., allows for the purposes of a qualified economic offer."

¶ 6.   The district subsequently petitioned the commission for a declaratory ruling that it could not be compelled to proceed to binding arbitration regarding

either (1) the association's proposal to continue the preparation time provisions contained in the previous memorandum of understanding, or (2) the terms of its offer for 1997–99 on "economic issues." In proceedings before the commission, the association proposed that, if the district "chooses to establish a schedule for a teacher which includes less preparation time" than that set forth in the previously effective memorandum of understanding, the teacher would be compensated for "work overload" based on a formula related to his or her "regular teaching salary."

¶ 7. To better understand the parties' proposals, and their significance to the issue under consideration, a brief description of impasse resolution procedures under WIS. STAT. § 111.70 and the changes effected by 1993 Act 16 is in order. Prior to the 1993 amendments, if the parties to a municipal employment collective bargaining agreement became "deadlocked with respect to any dispute between them over wages, hour and conditions of employment to be included in a new collective bargaining agreement," either party (or both of them) could petition the commission "to initiate compulsory, final and binding arbitration." WIS. STAT. § 111.70(4)(cm)6. Such "interest arbitration," however, is available only for "mandatory subjects of bargaining," that is, those which are "primarily related" to "wages, hours and conditions of employment," as opposed to those which are primarily related to the formulation or management of public policy, which are deemed "permissive subjects of bargaining." *See City of Beloit v. WERC*, 73 Wis. 2d 43, 54, 242 N.W.2d 231 (1976). Even those matters which relate primarily to educational policy, however, may impact on a teacher's "wages, hours or conditions of employment," and those

impacts are mandatorily bargainable and thus subject to binding interest arbitration. *Id.*

¶ 8.　Based in part on prior rulings, the commission determined in this case that the issue of how much preparation time, if any, a teacher should be allowed during the school day was not a mandatory subject of bargaining.[2] The commission also concluded, however, that the association's proposal for compensation for reductions in the previously agreed upon preparation time was a mandatorily bargainable "impact." Thus, as the commission noted, the district would "have had no obligation to proceed to interest arbitration over" the preparation time issue itself, but "because a preparation time 'impact' proposal is a mandatory subject of bargaining, the District would have had an obligation to bargain over the 'impact' proposal and could be compelled [prior to 1993] to proceed to interest arbitration over the inclusion of the 'impact' proposal in a successor agreement." In the commission's words, "[t]his . . . litigation raises the question of whether the foregoing allocation of rights and duties continues to be valid under [WIS. STAT. § 111.70] as it now exists."

¶ 9.　In 1993, the legislature amended the provisions of WIS. STAT. § 111.70 as they apply to bargaining units "consisting of school district professional employees." *See* § 111.70(4)(cm)5s. Under the revised statute, if a school district makes a "qualified economic offer," "no economic issues are subject to interest arbitration." *Id.* To be a "qualified economic offer," a proposal must "maintain the percentage contribution by [the district] to the . . . employes' existing fringe benefit costs . . . and . . . maintain all fringe benefits provided to the . . .

---

[2] The association makes an alternative argument challenging this determination, and we discuss the matter further below.

294

employes in a collective bargaining unit, as such contributions and benefits existed on the 90th day prior to expiration of any previous collective bargaining agreement between the parties." Section 111.70(1)(nc)1a Additionally, the district must propose to provide an average salary increase which meets or exceeds certain percentages specified in the statute. *See* § 111.70(1)(nc). Either a district or a bargaining unit may request the commission to determine whether the district "has submitted a qualified economic offer" which would preclude compulsory interest arbitration of economic issues. *See* § 111.70(4)(cm)5s. The district did so in this case.

¶ 10. The association argued before the commission that it should declare the preparation time provisions of the parties' previous memorandum of understanding to be a "fringe benefit," which the district was obligated to maintain in order to have a valid "qualified economic offer." The commission concluded, however, that "because the preparation time memorandum is a permissive subject of bargaining, it is not a 'fringe benefit' which the District must maintain as part of its qualified economic offer." The commission further concluded that the association's "impact proposal" (regarding compensation for reduced preparation time) was an "economic issue," *see* WIS. STAT. § 111.70(1)(dm), which must be the subject of bargaining, but cannot be arbitrated in light of the district's qualified economic offer. One commissioner dissented, concluding that the legislature intended to adopt an existing judicial definition for "fringe benefits" in the qualified economic offer amendments, and that under that definition, the district must maintain the status quo regarding teacher preparation time for it to have a qualified economic offer.

¶ 11. The association sought review of the commission's determination in circuit court. The court affirmed the commission's decision, and the association appeals.

## ANALYSIS

¶ 12. Our review is of the commission's decision, not that of the trial court. *See Gordon v. State Med. Examining Bd.*, 225 Wis. 2d 552, 556, 593 N.W.2d 481 (Ct. App. 1999), *review denied,* 228 Wis. 2d 168, 599 N.W.2d 409 (1999) (No. 98–2144). The initial dispute in this appeal, as in many involving our review of statutory interpretations by administrative agencies, is over the level of deference we should accord the commission's conclusion that teacher preparation time is not a "fringe benefit" within the meaning of WIS. STAT. § 111.70(1)(nc)1.a. When reviewing an agency's legal conclusion, a court may apply one of three levels of deference to the agency's interpretation of the law:

> First, if the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the [law], the agency determination is entitled to "great weight." The second level of review provides that if the agency decision is "very nearly" one of first impression it is entitled to "due weight" or "great bearing." The lowest level of review, the de novo standard, is applied where it is clear from the lack of agency precedent that the case is one of first impression for the agency and the agency lacks special expertise or experience in determining the question presented.

*Jicha v. DILHR*, 169 Wis. 2d 284, 290–91, 485 N.W.2d 256 (1992) (citations omitted).

¶ 13. The association argues that our review should be de novo because the commission has not previously been called upon to define "fringe benefits" within the context of evaluating whether a qualified economic offer has been made under the "recent" amendments to WIS. STAT. § 111.70. In addition, the association claims that the commission's interpretation is in conflict with a judicial definition of "fringe benefits," and that there are "broader reasons" for us to give little if any weight to the commission's interpretation, given that, in the association's view, the commission "failed to consider the extraordinarily damaging impact of its interpretation . . . on the union and its bargaining rights." *See West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 14–15, 357 N.W.2d 534 (1984).

¶ 14. The commission and the district both respond that the commission's conclusion that preparation time is not a "fringe benefit" within the meaning of the qualified economic offer provision is entitled to great weight deference from this court. In support, they point to the commission's experience and specialized knowledge in administering WIS. STAT. § 111.70 in general, and the qualified economic offer provisions in particular; to the fact that the commission has enacted rules regarding the implementation of the qualified economic offer provisions; and to the need for uniformity and consistency which deference to the commission's interpretation and application of the qualified economic offer legislation will promote. Both respondents acknowledge, however, that the dispute over the meaning of the term "fringe benefits" in the present context is "very nearly" an issue of first impression, and argue in the alternative that the commission's ruling is entitled to at least "due weight" deference. We agree with the latter argument.

¶ 15.  There can be no question that the commission for over two decades has, at the legislature's direction, administered the statutes relating to municipal employment relations. Also, since the enactment of the qualified economic offer amendments in 1993, it has engaged in rulemaking and issued declaratory rulings interpreting and applying the new provisions. The commission has consistently determined in prior rulings that teacher preparation time is primarily a matter of educational policy and management, and is thus not a mandatory subject of bargaining. Thus, as we discuss below, we have little difficulty granting great weight deference to the commission's conclusion that, on the present facts, the district had a duty to bargain only the impact of its decision to curtail the amount of preparation time from that previously allowed in its memorandum of understanding with the association, but not the preparation time allotment itself. *See West Bend Educ. Ass'n*, 121 Wis. 2d at 13.

¶ 16.  If we were to likewise grant great weight to the commission's interpretation of the term "fringe benefits" in the qualified economic offer statute, we would accept its interpretation so long as its interpretation is "reasonable," even if the association's interpretation were more reasonable. *See Ufe Inc. v. LIRC*, 201 Wis. 2d 274, 287, 548 N.W.2d 57 (1996). Due weight deference, however, involves only the breaking of a tie between competing reasonable interpretations in favor of the agency's position. *Id.* at 286–87.

¶ 17.  We are satisfied that the commission has considerable expertise in addressing fringe benefit issues in other contexts, and that it has gained experience in interpreting many aspects of the qualified

economic offer provisions, through rulemaking and otherwise. *See Racine Educ. Ass'n v. WERC*, 2000 WI App 149, ¶ 20, 238 Wis. 2d 33, 616 N.W.2d 504, *review denied*, 2000 WI 121, 239 Wis. 2d 309, 619 N.W.2d 92 (2000) (No. 99–0765). The commission acknowledges, however, that it "has not been presented with numerous disputes involving Act 16's QEO amendments since the law went into effect in 1993." The present litigation presented the commission with its first opportunity to consider whether a district's unilateral reduction of teacher preparation time periods precludes it from having a qualified economic offer under WIS. STAT. § 111.70(1)(nc)1.a. No longstanding commission interpretation is at stake, and the question before us is thus "very nearly" one of first impression. Under the circumstances, we are content to affirm the commission's interpretation if it is reasonable, provided that an alternative interpretation is not more reasonable. *See id.* at ¶ 19.

¶ 18.   We now apply this standard to the dispute at hand. The commission's conclusion that teacher preparation time is not a "fringe benefit" within the meaning of WIS. STAT. § 111.70(1)(nc)1.a is largely based on the following syllogism: All "fringe benefits" are mandatory subjects of bargaining; teacher preparation time is not a mandatory subject of bargaining; therefore, teacher preparation time cannot be a "fringe benefit." The commission noted in its decision that in its rules implementing the qualified economic offer amendments, the definitional examples of "fringe benefits" include no permissive subjects of bargaining, but do include numerous mandatory subjects, such as retirement benefits and various forms of group insurance. The commission also surveyed its decisions interpreting the statute in question, other statutory

299

references to "fringe benefits," and case law, and concluded that the term universally encompasses only mandatory subjects of bargaining, such as holidays, mileage reimbursement, sick pay, convention days, and the like.

¶ 19. The commission also noted that including a permissive subject of bargaining, such as preparation time, in the definition of "fringe benefit," would require the district to maintain existing educational policies or forfeit its opportunity to have a "qualified economic offer." It concluded that this would represent "the loss of employer control over matters primarily related to educational policy," and that there was no evidence in the legislative history of the qualified economic offer amendments of "such a significant concept." Additionally, the commission noted that requiring the district to bargain the impact of any reduction in teacher preparation time, albeit without recourse to binding arbitration, was not "meaningless," given that (1) prior to 1978, the collective bargaining statute for non-protective employees did not provide for interest arbitration; and (2) the parties had agreed upon the preparation time memorandum in 1996, even though it was a permissive subject of bargaining and even though the qualified economic offer legislation was in effect.

¶ 20. We conclude that the commission's interpretation that "fringe benefits," as used in WIS. STAT. § 111.70(1)(nc)1.a, does not include teacher preparation time is reasonable. An agency's interpretation is reasonable if it does not directly contravene the words of the statute, if it is not clearly contrary to legislative intent, and if it has a rational basis. *See Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 662, 539 N.W.2d 98

300

(1995). The commission's interpretation meets these criteria. The legislature has not defined "fringe benefits" in § 111.70(1), and nothing in the history of the legislation provided by the parties suggests an intent to include permissive subjects of bargaining within the term. We also deem the commission's analysis to be rationally based on the historical treatment of fringe benefits as mandatory subjects of bargaining, as contrasted to teacher preparation time, which has traditionally been deemed a permissive subject.

¶ 21. We turn now to the association's interpretation to see if it presents a more reasonable alternative to that of the commission. The association first points out that this court has established the definition of a "fringe benefit" as "an employment benefit granted by an employer that involves a money cost without affecting basic wage rates." *Brown County Attorneys Ass'n v. Brown County*, 169 Wis. 2d 737, 742–43, 487 N.W.2d 312 (Ct. App. 1992). It notes further that our *Brown County* opinion was published prior to the enactment of the qualified economic offer provisions, and thus, the legislature must be presumed to have knowledge of "the legal definition" of fringe benefits when it used the term in the new provisions. The association further claims that the provision of preparation time to teachers meets the *Brown County* definition because preparation time "is of substantial value" to teachers, and it represents a "cost" to the district. Finally, given the longstanding distinction between mandatory and permissive subjects of bargaining, the association agrees with the dissenting commissioner, who noted that if the legislature wished to limit the "fringe benefits" which must be maintained in order to effect a qualified economic offer to benefits that are mandatory subjects of bargaining, it could

have easily said so. According to the association, because the legislature chose instead to focus on "economic" and "non-economic" issues in the qualified economic offer provisions, the commission "had no authority" to read in a mandatory-subject-of-bargaining limitation.

¶ 22. The association also makes several arguments grounded in what it sees as the purpose and intent of the legislature, as well as the public policy at stake, in the qualified economic offer provisions. It notes that the net effect of the commission's ruling in this case means that association members will be required to work longer hours for the same compensation because the district continues to expect teachers to perform all of the duties previously accomplished during preparation time. The association argues that the legislature expressly conditioned a district's ability to avoid binding interest arbitration on its maintenance of the status quo for employee benefits, and that to permit the district to "gut the existing arrangements between the parties" and still avoid arbitration, violates both the language of the statute and the intent of the legislature.

¶ 23. The association points out that the commission has previously recognized the "importance of interest arbitration to meaningful bargaining," given its members' lack of a right to strike. It thus argues that the commission's present interpretation, in the words of the dissenting commissioner, "is simply unfair . . . [T]eachers are peremptorily stripped of their previous legal right to arbitrate the economic impact of the loss of their benefit without any compensatory recourse . . . [which is] in total disharmony with apparent legislative efforts to create a balanced *quid pro quo*." Finally, the association asserts that its interpretation

does not hamstring a school board's ability to set educational policy—the district may still choose to reduce the number of preparation periods it previously provided to teachers, but if it does so, it may not avail itself of the qualified economic offer amendments to avoid binding arbitration on economic issues in the event of a bargaining impasse.

¶ 24. We conclude that the association's proffered interpretation is also reasonable. It focuses on the language of the statute, arguably relevant case law, and colorable claims as to the legislative purpose and intent behind the qualified economic offer provisions. We cannot conclude, however, that an interpretation that the legislature intended to require that, in order to have a qualified economic offer, a school district must maintain the status quo on matters beyond those fringe benefits that have traditionally been deemed mandatory subjects of bargaining, is more reasonable than the commission's conclusion that it did not so intend.

¶ 25. First, we do not agree with the association that our definition of "fringe benefits" in *Brown County Attorneys Ass'n v. Brown County*, 169 Wis. 2d 737, 487 N.W.2d 312 (Ct. App. 1992), necessarily informs us of the legislature's intent when it used the term in WIS. STAT. § 111.70(1)(nc). The collective bargaining rights of municipal employees under § 111.70 were not before us in *Brown County*, and the statute we construed was one of very limited scope dealing with the transition of prosecutors from county to state employment in 1990. WISCONSIN STAT. § 978.12(6) provides that prosecutors making the transition to state employment could opt to remain covered by a county's fringe benefit plan in lieu of state benefits. *Id.*; *Brown County*, 169 Wis. 2d at 740. We reversed a circuit court declaratory judgment that

legal education seminar fees, bar dues, mileage reimbursement, beeper pay, and a casual day/disability plan were not fringe benefits within the meaning of § 978.12(6). *Brown County,* 169 Wis. 2d at 740. In doing so, we applied a dictionary definition of the term (" '[A]n employment benefit . . . granted by an employer that involves a money cost without affecting basic wage rates,' " *see id.* at 742–43 (citation omitted)) and concluded that each of the disputed items came within it. Although we accept the association's assertion that we must presume the legislature is aware of judicial interpretations of a statute when amending *that* statute, *see State v. Rosenburg,* 208 Wis. 2d 191, 196 ¶ 10, 560 N.W.2d 266 (1997), we reject the notion that the same presumption applies with respect to the judicial interpretation of a different statute in a context not relevant to the new legislation under consideration.

¶ 26.   Even if our *Brown County* definition were controlling, however, we are not convinced that "teacher preparation time" would necessarily come within it. We note first, as did the commission in its decision, that the specific items under consideration in *Brown County* (reimbursement for legal education, bar dues, and mileage; beeper pay; a casual day/disability plan) all primarily relate to wages, hours and conditions of employment, and would thus be mandatory subjects of bargaining. We concluded in our *Brown County* opinion that all "fringe benefits . . . are essentially 'compensation' for work done." *Id.* at 743. It makes little sense to talk in terms of teacher preparation time as being "compensation for work done." As the district notes, at issue in *Brown County* was whether the county's past practice of paying prosecutors for being on call during evenings, weekends and holidays was a "fringe benefit," as opposed to being

part of their "basic wage rate." *See id.* at 742–43. The fringe benefit question did not involve whether the county (or the state) could require prosecutors to be on call, or how much on-call time could be demanded of them, which are closer analogues to the present dispute over the amount of preparation time the district will allow during a class day.[3]

¶ 27.  Finally, we acknowledge the important and significant role that binding interest arbitration has played in the resolution of municipal employment disputes in Wisconsin over the past two decades. The fact remains, however, that in the 1993 amendments, the legislature sought to limit the occasions that an employer of "school district professional employees" can be required to submit contract disputes to interest arbitration. We conclude that it is not more reasonable to conclude that in so doing, the legislature intended to require an employer to maintain the status quo in matters not subject to mandatory bargaining, than to conclude, as did the commission, that the legislature's fringe benefit maintenance requirement extends only to matters traditionally subject to mandatory bargaining. If it is true, as the association argues, that the determination at issue involves significant policy judgments relating to the implementation and administration of the qualified economic offer amend-

---

[3] The commission was careful to distinguish a policy decision regarding the amount of preparation time to be allowed, which it concluded was *not* a "fringe benefit," from the impact of the decision on teachers, which the commission expressly held was mandatorily bargainable. Because the impact proposal was an "economic issue," however, the commission determined that it was not subject to interest arbitration in light of the district's qualified economic offer. *See* WIS. STAT. § 111.70(4)(cm)5s.

ments to WIS. STAT. § 111.70, that is all the more reason for us to defer to the commission's interpretation. *See Ufe Inc.*, 201 Wis. 2d at 286 ("The deference allowed an administrative agency under due weight is not so much based upon its knowledge or skill as it is on the fact that the legislature has charged the agency with the enforcement of the statute in question.").

¶ 28. The association argues in the alternative that, if we conclude the commission did not err in determining that an item must be a mandatory subject of bargaining in order to be a "fringe benefit" under WIS. STAT. § 111.70(1)(nc), we must then conclude that the commission erred when it determined that the teacher preparation time at issue in the present case was not a mandatory subject of bargaining. We disagree.

¶ 29. The commission noted that it has consistently ruled that the amount and allocation of teacher preparation time is a permissive subject of bargaining.[4] It then relied on the testimony of the district's superintendent as support for its conclusion that

> the amount of preparation time provided to teachers during the workday directly impacts on fundamental educational policy issues such as: (1) how many and what types of classes can be offered to students; (2) how will existing school buildings be used; and (3) how should the student day be structured.

As we have noted, the commission's determination that a particular item is not a mandatory subject of bargaining is generally entitled to great weight deference from a reviewing court. *Blackhawk Teachers' Fed'n v.*

---

[4] *See Racine Unified Sch. Dist.*, Dec. No. 28859–B (WERC, 3/98); *Milwaukee Bd. of Sch. Dirs.*, Dec. No. 20093–A (WERC, 2/83); *Oak Creek Sch. Dist.*, Dec. No. 11827–D (WERC, 9/74).

*WERC*, 109 Wis. 2d 415, 421–24, 326 N.W.2d 247 (Ct. App. 1982). The commission's determination in this case that the teacher preparation time at issue is a permissive subject of bargaining satisfies all four of the criteria identified by the supreme court for granting great weight deference to an agency's legal ruling. *See Harnischfeger Corp.*, 196 Wis. 2d at 660 ("(1) [T]he agency was charged by the legislature with the duty of administering the statute; (2) . . . the interpretation of the agency is one of long-standing; (3) . . . the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) . . . the agency's interpretation will provide uniformity and consistency in the application of the statute."). The association does not seriously argue otherwise, and in fact concedes that "there may be greater deference due" the commission's determination regarding whether preparation time is a mandatory or permissive subject of bargaining than is due its interpretation of "fringe benefits."

¶ 30.  The association notes, however, that the commission has also consistently determined employee "break periods" to be a mandatory subject of bargaining. It argues that, on the present record, teacher break periods are the real issue, not the structuring of a student's day. The association points to testimony from the district's superintendent that teachers may use preparation time any way they choose, including spending time in the teacher's lounge, and to his testimony that reducing teacher preparation periods represents a cost savings to the district because it reduces the need to hire additional staff to cover time with students. Thus, in the association's view, preparation time is in reality "break time," that its reduction directly affects the hours a teacher must work, and that the issue is therefore primarily related to hours

and conditions of employment. As a mandatory subject of bargaining, the teacher preparation time memorandum of understanding would thus, according to the association, meet the commission's test for a "fringe benefit" which the district must maintain in order for it to have a qualified economic offer under WIS. STAT. § 111.70(1)(nc).

¶ 31. Under the great weight deference standard of review, we will uphold the commission's determination that the teacher preparation time at issue is not a mandatory subject of bargaining if it has "any rational basis." *See Blackhawk Teachers' Fed'n*, 109 Wis. 2d at 424. The commission's ruling, if it is reasonable, must prevail regardless of whether the association proposes an alternative that is more reasonable. *See Ufe Inc.*, 201 Wis. 2d at 286–87. We are satisfied that the commission's determination that the teacher preparation time at issue was not mandatorily bargainable has a rational basis.

¶ 32. First, the commission's present determination is consistent with its treatment of the issue in rulings spanning the past twenty-five years. More important, however, although the record establishes that teachers may exercise considerable discretion over how they choose to utilize preparation time, and further that maintaining the practices set forth in the memorandum has cost implications for the district, the district also presented testimony that the number of preparation periods in a class day has significant impacts on the number of courses the district may offer, its provision of library and guidance services, and the possible restructuring of a student's day. In short, we conclude that the commission engaged in a proper

balancing of the impacts of teacher preparation time on educational policy, as opposed to its impact on teachers' hours and conditions of employment, and reached a rationally-based conclusion that the former outweighed the latter.

## CONCLUSION

¶ 33. For the reasons discussed above, we affirm the circuit court's order.

*By the Court.*—Order affirmed.