EPIC STAFF MANAGEMENT, INC., and Continental Casualty Co., Plaintiffs-Appellants,

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Defendant-Respondent,

Porfirio VIVEROS, Defendant,

STEELWIND INDUSTRIES, INC., and Travelers Indemnity Co., Defendants-Respondents.

Court of Appeals

*No. 02–2310. Submitted on briefs February 7, 2003.—
Decided June 26, 2003.*

2003 WI App 143

(Also reported in 667 N.W.2d 765.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Christopher T. Kolb* of *Halling & Cayo, S.C.*, Milwaukee.

On behalf of the defendant-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *Lowell E. Nass*, assistant attorney general, and *James E. Doyle*, attorney general.

On behalf of the defendants-respondents, Steelwind Industries and Travelers Indemnity Co., the cause was submitted on the brief of *John A. Griner IV* of *Law Offices of Catherine A. Thomas*, Brookfield.

Before Roggensack, Deininger and Lundsten, JJ.

¶ 1. DEININGER, J. Steelwind Industries, Inc., a steel fabricator, contracted with Epic Staff Management, Inc., for Epic to provide Steelwind with various human resource services, including the provision of worker's compensation insurance. Epic and its worker's compensation insurer, Continental Casualty Co., appeal a circuit court order that affirmed a determination by the Labor and Industry Review Commission that Epic and its carrier are responsible for worker's compensa-

tion benefits arising from an injury sustained by a worker at the Steelwind plant.[1]

¶ 2. Epic claims that because its contract with Steelwind ended on a date prior to the worker's injury, Epic was not the employer responsible for his worker's compensation benefits. Epic also claims that the commission incorrectly concluded that Epic meets the definition of a "temporary help agency" under Wis. Stat. § 102.01(2)(f) (2001–02).[2]

¶ 3. We conclude the commission did not err in determining that Epic is the employer responsible for providing worker's compensation benefits to the injured worker. We also conclude that the commission's statement that Epic is a "temporary help agency" was not necessary to its determination of the responsible employer. Accordingly, we direct that the discussion of Epic's status as a "temporary help agency" under Wis. Stat. §§ 102.01(2)(f) and 102.04(2m) be stricken from the circuit court and commission orders. So modified, we affirm.

## BACKGROUND

¶ 4. Steelwind is a steel fabricator specializing in the construction of large castings and structural steel components. Epic refers to itself as a "professional employer organization" that contracts with businesses

---

[1] Epic and its insurer filed a joint brief, as did Steelwind and its insurer, Travelers Indemnity Co. We refer to the parties as "Epic" and "Steelwind," respectively. The caption also includes the injured worker, Porfirio Viveros, as a defendant. There is no dispute that Mr. Viveros is entitled to worker's compensation benefits from either Epic or Steelwind, and he has not participated in this appeal.

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

to provide various human resource services. Epic and its clients typically divide employer rights and responsibilities as follows: Epic assumes responsibility for paying and reporting wages, providing health benefits, and procuring worker's compensation insurance for worksite employees, while Epic's clients (such as Steelwind) supervise, direct, and control the day-to-day worksite activities. Epic fulfills its obligations with funds provided by the client and it charges a fee for its services.

¶ 5. In January 1999, Epic contracted with Steelwind to, among other things, pay "taxes and wages," procure health benefits, and "secure and maintain Workers' Compensation coverage" for Steelwind's workforce. At the start of the contract, Epic hired Steelwind's production workforce and formally became the workers' employer for payroll, tax and insurance purposes. Steelwind provided Epic with the funds necessary to issue payroll checks to workers and to pay the various insurance premiums when due. Steelwind also paid Epic a fee for fulfilling these and other services rendered under the contract.

¶ 6. The term of the contract was one year, ending on December 31, 1999. The contract provided it would automatically renew for an additional one-year term in the absence of a termination notice given by either party not later than thirty days prior to the expiration of the first one-year term.

¶ 7. By late 1999, Steelwind was dissatisfied with its arrangement with Epic and wanted to terminate the contract. Steelwind retained a worker's compensation insurer to assume the coverage previously obtained through Epic, with coverage effective December 31, 1999. Steelwind did not, however, provide Epic with the thirty-day termination notice required by contract.

Thus, in December 1999 and January 2000, Steelwind and Epic discussed the possibility of terminating the contract through a separate agreement.

¶ 8. On January 10, 2000, a worker at the Steelwind plant was injured while performing his job duties. Two days later, Epic and Steelwind reached an agreement to terminate their contract. Among other things, the parties agreed that the termination of their contract would be effective as of December 31, 1999. The agreement did not, however, specifically address responsibility for the injuries sustained by the worker at the Steelwind plant two days earlier.

¶ 9. The injured worker filed a worker's compensation claim and Steelwind's insurer paid all benefits due. Steelwind and its insurer then filed a hearing application with the Department of Workforce Development, seeking reimbursement from Epic on the grounds that the injured worker was Epic's employee, not Steelwind's, at the time of the injury. An administrative law judge agreed with Steelwind, determining that because the initial agreement between Steelwind and Epic was still in effect on the injury date, Epic was the employer responsible for worker's compensation benefits. The administrative law judge did not give effect to the parties' agreement to backdate the termination of their contract to December 31, 1999, ten days prior to the accident. He concluded that it "would clearly be contrary to public policy to have agreements terminated retroactively to avoid liability."

¶ 10. The administrative law judge ordered Epic and its insurer to reimburse Steelwind's insurer for the worker's compensation benefits paid to date. Epic appealed the decision to the Labor and Industry Review Commission. The commission framed the "dispositive question" before it as "what effect should [it] give the

retroactive termination" of the parties' contract. The commission resolved this question by analyzing WIS. STAT. § 102.03(1).[3] The commission concluded as follows:

> Under WIS. STAT. § 102.03(1) an employer is liable where, at the time of the injury, the employer and employee are subject to WIS. STAT. ch. 102. The time of the injury in this case was January 10, 2000. On that date, the [parties' contract] had not yet been cancelled and remained in effect. On that date, Epic was the subject employer vis-à-vis the [injured worker].

¶ 11. Based on this conclusion, the commission determined that "[f]or the purposes of the authority of the department and this commission under WIS. STAT. ch. 102," Epic was the "employer at the time of the injury" and therefore is "the liable employer" for worker's compensation benefits. The commission thus determined that the parties' January 12th retroactive termination agreement could not serve to relieve Epic of its obligations as an employer under ch. 102 for the January 10th injury. It commented, however, that "Epic may be able to rely on [the January 12th retroactive termination agreement] to obtain contribution from Steelwind in an action in equity or . . . contract."

---

[3] WISCONSIN STAT. § 102.03(1) states in relevant part:

(1) Liability under this chapter shall exist against an employer only where the following conditions concur:

(a) Where the employee sustains an injury.

(b) Where, at the time of the injury, both the employer and employee are subject to the provisions of this chapter.

(c) 1. Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment.

¶ 12. Epic sought judicial review of the commission's decision and order. The circuit court affirmed the commission's decision, concluding that Epic was the "liable party" because "at the time of [the] injury, the contract *was not cancelled.*" Epic appeals the circuit court's order. Steelwind and the commission respond, both asserting the correctness of the circuit court and commission orders.

## ANALYSIS

¶ 13. We review the commission's factual findings and legal conclusions, not those of the circuit court. *Michels Pipeline Constr., Inc. v. LIRC*, 197 Wis. 2d 927, 930, 541 N.W.2d 241 (Ct. App. 1995). Whether Epic is responsible for worker's compensation benefits under WIS. STAT. ch. 102 is a mixed question of law and fact. *See id.* at 931. Because the parties do not contest the material facts on appeal, our review is limited to the commission's application of the worker's compensation statutes to these facts, which presents a question of law. *See id.*

¶ 14. Through various concessions, the parties have narrowed the scope of this appeal to a single question. The parties agree that: (1) the injured worker is entitled to worker's compensation benefits; (2) Epic was the employer responsible for worker's compensation benefits for the duration of the parties' January 1, 1999 contract; and (3) the parties did not agree to terminate the contract until after the injury occurred. The only issue in dispute is whether the commission must honor the parties' retroactive termination agreement when determining the responsible employer for purposes of WIS. STAT. ch. 102.

¶ 15. As we have described, the commission decided it need not and should not give retroactive effect to the termination agreement, concluding instead that the parties' rights and responsibilities under the worker's compensation act became fixed when the injury occurred, regardless of any post-injury agreements to the contrary. This is a legal conclusion, and when reviewing the commission's conclusion of law,

> [w]e apply a sliding scale of deference that is contingent upon the level of [the commission's] experience, technical competence and specialized knowledge. The greatest level of deference requires that we give great weight to [the commission's] legal conclusion[] if it is a question that it routinely resolves. The next level of deference provides that if [the commission's] decision is very nearly one of first impression, we must give due weight to that decision. Finally, we owe no deference to [the commission] and will conduct a de novo review if it is clear from the lack of precedent that the case is one of first impression and [the commission's] special expertise and experience [are] no greater than ours.

*Bretl v. LIRC*, 204 Wis. 2d 93, 104–05, 553 N.W.2d 550 (Ct. App. 1996) (citations omitted).

¶ 16. The parties dispute the level of deference we should grant to the commission's conclusion. Steelwind and the commission assert that we owe great weight deference to the commission's decision because the legislature has charged the commission "with determining disputed compensation claims and as such has developed expertise in the area." Epic counters that de novo review is appropriate because this case involves a question of "first impression," one which Epic nonetheless acknowledges involves an issue of "public policy."

■

¶ 17. We conclude that the commission's decision should be accorded, at a minimum, due weight deference. We agree with Epic that it does not appear the commission has had previous occasion to apply WIS. STAT. § 102.03(1) to an attempted retroactive alteration of an employment relationship. We conclude, however, that the public policy implications of the commission's ruling weigh in favor of our according it at least due weight deference. An agency's ruling is entitled to judicial deference when the agency is called upon to make "significant policy judgments relating to the implementation and administration" of a statute it is charged with administering. *Dodgeland Educ. Ass'n v. WERC*, 2000 WI App 260, ¶ 27, 240 Wis. 2d 287, 623 N.W.2d 159, *aff'd*, 2002 WI 22, 250 Wis. 2d 357, 639 N.W.2d 733; *see also West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 12, 357 N.W.2d 534 (1984) ("Where a legal question is intertwined with . . . value or policy determinations . . . a court should defer to the agency which has primary responsibility for determination of fact and policy.").

■

¶ 18. Moreover, we note that when an agency has "developed broad expertise in [an] area," and the application of a statute to particular facts "implicates value and policy judgments," the agency's lack of "particular expertise on the question presented" does not prevent our according it due weight deference. *Telemark Dev., Inc. v. DOR*, 218 Wis. 2d 809, 821, 581 N.W.2d 585 (Ct. App. 1998). We conclude that is the case here. *See, e.g., Begel v. LIRC*, 2001 WI App 134, ¶ 8, 246 Wis. 2d 345, 631 N.W.2d 220 ("LIRC has administered the worker's compensation statutes for more than eighty years and, as a consequence, it has developed considerable exper-

tise."). Accordingly, we accord the commission's present determination due weight deference.

¶ 19. Under due weight deference, "a court will not overturn a reasonable agency decision that comports with the purpose of the statute unless the court determines that there is a more reasonable interpretation available." *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 286–87, 548 N.W.2d 57 (1996). An interpretation of a statute is reasonable if it is consistent with "the language of the statute, arguably relevant case law, and colorable claims as to the legislative purpose and intent behind" the statutory scheme at issue. *Dodgeland Educ. Ass'n*, 240 Wis. 2d 287, ¶ 24. We conclude that the commission's interpretation of Wis. Stat. § 102.03(1) meets this standard. We also conclude that Epic's desired contrary interpretation is not more reasonable.[4]

¶ 20. First, the commission's decision is consistent with the plain language of Wis. Stat. § 102.03(1). Section 102.03(1) provides that worker's compensation liability "shall exist" if "at the time of the injury," the employer and employee are subject to the worker's compensation act, and if "at the time of the injury" the employee is performing his job duties. Because § 102.03(1) provides that liability under Wis. Stat. ch. 102 is determined by the circumstances existing "at the time· of the injury," the commission reasonably con-

---

[4] Because we conclude that the commission's decision is affirmable under the due weight standard of review, we need not decide whether the commission's decision might be entitled to great weight deference, as both Steelwind and the commission contend. *See CenturyTel of Midwest-Kendall, Inc. v. PSC*, 2002 WI App 236, ¶ 18, 257 Wis. 2d 837, 653 N.W.2d 130, *review dismissed,* 2003 WI 1, 258 Wis. 2d 111, 655 N.W.2d 130 (Wis. Nov. 12, 2002) (No. 02-0053).

cluded that the parties' rights and responsibilities under the worker's compensation act should also be conclusively established at the time of the injury.

¶ 21. Second, the commission's decision is consistent with closely related case law. Wisconsin courts have long held that the parties' rights and responsibilities become fixed under the worker's compensation act on "the date when the employee is disabled from rendering further service." *Employers Mut. Liab. Ins. Co. v. McCormick*, 195 Wis. 410, 414, 217 N.W. 738 (1928). The worker in *McCormick* contracted tuberculosis as a result of his employment and eventually became totally disabled due to the disease. *Id.* at 415. During the period of the worker's employment (and the gradual onset of his disease), his employer had three different worker's compensation insurers. The question before the supreme court was which of the three insurers was responsible for worker's compensation benefits. *Id.* at 411.

¶ 22. Pointing to provisions in the worker's compensation act that required various events to occur within a certain number of days from the injury date, the court noted that the legislature "framed" the provisions of the act "with the thought that there would always be a definite date—that of the accident—which would be the basis for determining liability." *Id.* at 414. Consistent with this legislative intent and the need to avoid making the act too "difficult to administer," the court held that "[t]he company that had insured the compensation liability at the time disability occurred is the one that must pay the compensation awarded." *Id.* at 414–15. We view the commission's decision as being consistent with the bright line rule of *McCormick* that

381

fixes an insurer's liability under the worker's compensation act on the date of an injury or disability.[5]

¶ 23. Finally, the commission's decision is consistent with the legislative intent behind the worker's compensation act. The "basic purpose" of the worker's compensation act "is to provide prompt justice for injured workers and to prevent, as far as possible, the delays that might arise from protracted litigation. The proceedings should be as simple and as speedy as possible." *Employers Health Ins. Co. v. Tesmer*, 161 Wis. 2d 733, 738, 469 N.W.2d 203 (Ct. App. 1991) (citation omitted). The commission could reasonably conclude that allowing parties to retroactively alter employment relationships that existed on the date of a compensable injury would conflict with the goals of promptness, certainty and efficiency in compensating injured workers.

¶ 24. We therefore conclude that the commission's interpretation of WIS. STAT. § 102.03(1) is reasonable because it is consistent with the statute's language, relevant case law, and the legislative purpose behind the statute. We therefore turn to a consideration of Epic's proffered interpretation that WIS. STAT. ch. 102

---

[5] We cited *McCormick* in *North River Insurance Co. v. Manpower Temporary Services*, 212 Wis. 2d 63, 74, 568 N.W.2d 15 (Ct. App. 1997). In *North River*, an employee of a temporary services company experienced wrist pain while working at a factory. *Id.* at 66. The employee eventually terminated his temporary employment status with the company and became an employee of the factory. *Id.* Within the first few days of work as a factory employee, the employee's pain became too severe for him to perform his duties. *Id.* at 66–67. We concluded that the factory was liable for worker's compensation benefits, despite the fact that it had employed the worker for only a few days, because it was his employer at the time the disability occurred. *Id.* at 73–74.

does not prevent employers from entering into post-injury agreements shifting responsibility for worker's compensation payments. We may adopt Epic's interpretation only if we conclude it is more reasonable than the commission's. *CenturyTel of Midwest-Kendall, Inc. v. PSC*, 2002 WI App 236, ¶ 18, 257 Wis. 2d 837, 653 N.W.2d 130, *review dismissed,* 2003 WI 1, 258 Wis. 2d 111, 655 N.W.2d 130 (Wis. Nov. 12, 2002) (No. 02–0053).

¶ 25. Epic claims that its interpretation is the more reasonable one because the commission's decision thwarts Epic's "fundamental" right to contract with others. We disagree. The scope of the commission's decision is limited to the determination of the parties' rights and responsibilities under the worker's compensation act. The commission specifically noted in its decision that "Epic may be able to rely" on its contract termination agreement "to obtain contribution from Steelwind in an action in equity or on the contract itself."

¶ 26. Epic argues, however, that it cannot seek alternative relief from Steelwind because the commission mistakenly said in its decision that Epic comes "within the definition of a 'temporary help agency' in WIS. STAT. § 102.01(2)(f) because Epic leased or placed its employees with Steelwind." Epic directs our attention to WIS. STAT. § 102.04(2m), which provides that a temporary help agency "may not seek or receive reimbursement from another employer for any payments" of compensation made to an injured employee. Epic is understandably concerned that if the commission's conclusion that it is a "temporary help agency" is permitted to stand, the doctrine of issue preclusion and the language of § 102.04(2m) may prevent it from obtaining the very relief from Steelwind that the commission suggested Epic was entitled to pursue.

¶ 27. WISCONSIN STAT. § 102.01(2)(f) defines a "temporary help agency" as "an employer who places its employee with or leases its employees to another employer who controls the employee's work activities and compensates the first employer for the employee's services, regardless of the duration of the services." Epic claims that it did not lease or place *its* employees with Steelwind. Rather, it asserts that, at the start of the parties' contract, Epic hired *Steelwind's* employees.[6] Thus, in Epic's view, it did not lease employees to Steelwind but simply assumed certain employer responsibilities for Steelwind's existing workforce.

¶ 28. We also note that it could be argued that Steelwind did not compensate Epic for the services provided by Epic employees, another element of the definition under WIS. STAT. § 102.01(2)(f). The compensation Steelwind paid to Epic was ostensibly for the human resources services Epic provided. The language of the parties' contract supports this view ("EPIC is strictly in the business of managing certain aspects of human resources for [Steelwind]"), as does the testimony of Steelwind's president:

> We entered in a contract . . . for EPIC Staff Management to kick over employment, Human Resource, [and] OSHA [Occupational Safety and Health Act] compliance for all employees of Steelwind effective January 1st of '99.

---

[6] Epic hired the injured worker at some time after the contract start date, but it appears from the record that the hiring decision was Steelwind's and that Epic provided human resource services for the employee as it did for all of Steelwind's workforce under the parties' contract.

... [A]t the time I signed the agreement, [Epic] had several HR people, several OSHA compliance people on staff, very knowledgeable.

I had anticipated at that time that we would go from employing probably 40 people up to approximately 150 people, and I felt that we were not in a position that we could handle the OSHA compliance, handle the HR issues, so we elected to pay EPIC Staff Management six percent of payroll to handle all of these items.

¶ 29. Epic did not dispute before the commission that it was liable as the employer of Steelwind's workforce for the payment of worker's compensation benefits to employees for as long as its contract with Steelwind remained in effect. That is, had the worker been injured on December 30, 1999, instead of on January 10, 2000, the instant dispute would not have materialized. The only question the commission was asked to decide was whether the January 12th agreement between Epic and Steelwind terminated Epic's obligations as an employer under Wis. Stat. ch. 102 as of December 31, 1999. It was not necessary, therefore, for the commission to decide whether Epic met the statutory definition of a "temporary help agency." Epic acknowledged its status as the injured worker's one-time employer for purposes of ch. 102, claiming only that its employer status terminated as of a date prior to the injury.

¶ 30. Because the commission's conclusion that Epic is a "temporary help agency" under Wis. Stat. § 102.01(2)(f) was not necessary to its determination, and because the commission plainly contemplated that Epic should not be precluded from pursuing Steelwind for reimbursement for the benefits at issue, we modify

385

the circuit court and commission decisions by striking all discussion of and references to "temporary help agency" and WIS. STAT. §§ 102.01(2)(f) and 102.04(2m). Thus, should Epic elect to pursue Steelwind for reimbursement under its termination agreement of January 12, 2000, a court will not be precluded from considering anew the impact (if any) of §§ 102.01(2)(f) and 102.04(2m) on Epic's ability to recover.[7]

## CONCLUSION

¶ 31. For the reasons discussed above, we modify the appealed circuit court order, as well as the commission decision under review, in the manner specified in the preceding paragraph. So modified, we affirm.

---

[7] Because the commission's decision stands without reliance on WIS. STAT. § 102.01(2)(f), it is likewise unnecessary for this court to decide whether Epic is a "temporary help agency." We note that the supreme court has considered the purpose and scope of the "temporary help agency" definition adopted by the legislature in 1981. *See Gansch v. Nekoosa Papers, Inc.*, 158 Wis. 2d 743, 463 N.W.2d 682 (1990). The court explained that the definition in § 102.01(2)(f), together with WIS. STAT. § 102.29(6) (barring employees of temporary help agencies from suing lessee-employers in tort for injuries submitted as worker's compensation claims), was a "legislative response" intended to clarify and simplify "the determination of whether a temporary employee injured in the workplace may maintain a tort action against the temporary employer." *Id*. at 751–52. The court concluded that the definition is *not* limited "to an employer who is in the business of placing its employees with another employer," *id*. at 748–49, and that an equipment-lessor was a "temporary help agency" when it leased a bulldozer and its operator to a paper mill for use at the mill and received compensation from the mill for the operator's services, *id*. at 752–55.

*By the Court.*—Order modified and, as modified, affirmed.