COURT OF APPEALS
DECISION
DATED AND FILED

March 9, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP2415**

Cir. Ct. No.  **2018CV3101**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

V&J EMPLOYMENT SERVICES, INC., V&J NATIONAL ENTERPRISES, LLC, V&J UNITED ENTERPRISES, LLC AND V&J HOLDING COMPANIES, INC,

   PLAINTIFFS-APPELLANTS,

   V.

LIBERTY MUTUAL INSURANCE COMPANY AND LIBERTY MUTUAL FIRE INSURANCE COMPANY,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Milwaukee County: KEVIN E. MARTENS, Judge.  *Affirmed*.

Before Brash, P.J., Dugan and Donald, JJ.

¶1    BRASH, P.J. V&J Employment Services, Inc., V&J National Enterprises, LLC, V&J United Enterprises, LLC, and V&J Holding Companies, Inc. (collectively "V&J") appeal an order of the trial court granting summary judgment

in favor of Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company (collectively "Liberty"),[1] dismissing all of V&J's claims with prejudice. Liberty's motion for summary judgment asserted that the policies it had issued to V&J did not provide coverage for the defense and indemnification of V&J with regard to several lawsuits that had been filed against V&J in New York. The trial court found that the policies did not provide coverage as a matter of law.

¶2      V&J also appeals the trial court's denial of its motion for default judgment, filed after Liberty initially failed to answer the complaint. The trial court ruled that the failure was the result of excusable neglect on the part of Liberty, and granted its motion to enlarge the time for it to answer. Additionally, V&J requests that this court remand this matter to allow discovery relating to its motion for default judgment, particularly with regard to the Liberty employees involved in its failure to timely answer the complaint.

¶3      We conclude that the trial court did not err in its grant of summary judgment in favor of Liberty nor in its denial of V&J's motion for default judgment. We therefore affirm.

**BACKGROUND**

¶4      V&J owns restaurant franchise operations throughout the United States. For these businesses, V&J obtained various commercial insurance policies with Liberty, which included Employee Benefits Liability ("EBL") coverage.

---

[1] Although we refer to the defendants collectively for ease of reading, they are separate entities. This will be further discussed below.

¶5    Beginning in 2015, six class-action lawsuits against V&J were filed in New York.[2] Those actions alleged that V&J had improperly withheld tips from delivery drivers, failed to fully compensate them for overtime, and under-reimbursed them for the use of their personal vehicles. V&J, in turn, filed the action underlying this appeal against Liberty in April 2018, alleging breach of contract because Liberty had failed to defend and indemnify V&J in the New York actions. It sought a declaratory judgment that its policies with Liberty provided coverage under the EBL endorsements.

¶6    Liberty failed to answer that complaint. As a result, V&J filed a motion for default judgment. Liberty responded with a motion to enlarge its time to answer the complaint. Liberty explained that V&J's complaint had named the wrong defendant; its policies were issued by Liberty Mutual Fire Insurance Company, not Liberty Mutual Insurance Company, and they are "entirely different" entities.

¶7    Additionally, Liberty stated that the policy number referenced in the complaint was formatted erroneously. As a result, it had not been able to locate V&J's policies when it initially received the complaint.

¶8    In support of its motion for an enlargement of time to answer, Liberty submitted two affidavits from a paralegal in its legal department. He explained that during his initial search for V&J's policies after receiving the complaint, he had made an inquiry with another Liberty affiliate, Liberty International Underwriters,

---

[2] The parties identified these cases as *Crawford v. V&J United Enters., LLC*, No. 15-CV-986 (N.D.N.Y.); *Clute v. V&J Emp. Servs. Inc.*, No. 16-CV-772 (N.D.N.Y.); *Spano v. V&J Nat'l Enters., LLC*, No. 16-CV-5419 (W.D.N.Y.); *Beebe v. V&J Nat'l Enters., LLC*, No. 17-CV-6075; and *Bordeau v. V&J Emp. Servs. Inc.*, No. 17-CV-188 (N.D.N.Y.). We refer to these cases collectively as the "New York actions."

as to whether it had issued V&J's policies. That entity confirmed that it did hold policies for V&J, so the paralegal assumed that there were no other Liberty policies involved, and that Liberty International Underwriters would handle the case. He was never informed that Liberty International Underwriters determined that its policies issued to V&J were not relevant to this case.

¶9 Upon receiving V&J's motion for default judgment, however, the paralegal searched its system again for active policies. In that search, he tried adding spaces around the ampersand in V&J, although there were no spaces included in V&J's name as set forth in the complaint. He discovered that policies had been issued to V&J by Liberty Mutual Fire Insurance Company.[3] Liberty then promptly retained counsel to address this matter.

¶10 Liberty argued that V&J was not entitled to a default judgment because not only had they named the wrong defendant, they had also served the complaint on yet a third different entity, LM General Insurance Company. In the alternative, Liberty asserted that its failure to answer was the result of excusable neglect due to the problems with identifying the policies, and not because of a lack of diligence or good faith.

¶11 A hearing on the motion for default judgment was held in September 2018. The trial court found that although it would have been a "more prudent course of action" for Liberty to answer the complaint and deny the allegations, or file a motion to dismiss, it was not "inexcusable." The court further found that, under the circumstances described in the paralegal's affidavits, the fact that Liberty had not

---

[3] V&J subsequently amended its complaint to add Liberty Mutual Fire Insurance Company as a defendant in October 2018.

performed a broader search for the V&J policies until receiving the motion for default judgment was neither unreasonable nor inexcusable.

¶12     The court also noted that Liberty had acted promptly in filing a motion to enlarge the time to answer.  Additionally, the court found that the delay had not caused V&J any undue prejudice or harm.  Therefore, giving weight to the "interest of justice" to the extent that it is preferable to "address matters if we can on the merits," the court denied V&J's motion for default judgment.

¶13     Liberty subsequently filed a motion for summary judgment.  It asserted that the EBL provisions of V&J's policies only provide coverage for an "act, error or omission [that] is negligently committed in the administration of [V&J's] employee benefit program."  (Internal quotation marks omitted.)  Liberty explained that according to the policies, such programs include group insurance plans; profit sharing plans; unemployment insurance, social security, disability plans, and workers' compensation; vacation plans, leave of absence plans, tuition assistance plans, and transportation and health club subsidies; and other similar benefits programs.  Additionally, Liberty stated that the "administration" of employee benefits programs, as defined in the policy, includes providing information to employees about those programs, handling records relating to the programs, and terminating employee involvement in the programs.

¶14     In contrast, Liberty contended that the actions filed in New York relate to "unpaid or underpaid wages," which are not included in the policy definition of employee benefits programs.  Furthermore, Liberty contended that the allegations in the New York actions described an "intentional, willful and knowing company policy" of V&J, as opposed to negligent acts, and thus were excluded from coverage.

¶15    The trial court agreed.  It held that the EBL coverage provisions in the policies issued by Liberty Mutual Fire Insurance Company were "unambiguous" and "d[id] not cover the wage and compensation claims" alleged in the New York actions.  Therefore, Liberty did not have a duty to defend or indemnify V&J in those actions.  The court further ruled that Liberty Mutual Insurance Company was an improperly named defendant, as argued by Liberty in its motion, and which was not disputed by V&J.  Therefore, the court granted Liberty's motion for summary judgment for both entities, and dismissed V&J's claims with prejudice.  This appeal follows.

## DISCUSSION

*Denial of Motion for Default Judgment and Discovery*

¶16    We first address V&J's argument that the trial court erred in denying its motion for default judgment against Liberty.  "Whether to grant a default judgment is within the discretion of the trial court." ***Oostburg State Bank v. United Sav. & Loan Ass'n***, 125 Wis. 2d 224, 238, 372 N.W.2d 471 (Ct. App. 1985).  Our review of that trial court's discretionary decision is deferential, in that we "examine the record to gauge whether the [trial] court reached a reasonable conclusion based on proper legal standards and a logical interpretation of the facts." ***State v. Evans***, 2000 WI App 178, ¶7, 238 Wis. 2d 411, 617 N.W.2d 220.

¶17    In response to V&J's motion for default judgment, Liberty sought an enlargement of time to file its answer after the time period for answering had expired.  Generally, the party seeking a time enlargement is required to establish

that its failure to file a timely answer was the result of excusable neglect. *See* WIS. STAT. § 801.15(2)(a) (2017-18).[4]

¶18    Liberty's argument in support of excusable neglect was that V&J's complaint named the incorrect entity as well as an erroneously formatted policy number, which led to Liberty's difficulty and confusion in locating the relevant policies. Indeed, the trial court noted that upon receipt of the complaint, Liberty's paralegal had "immediately" reviewed it and conducted a search to find policies issued to V&J. The court also observed that Liberty had acted promptly upon discovering that V&J's policies that were relevant to the New York actions were through Liberty Mutual Fire Insurance Company rather than Liberty International Underwriters. Based on these facts and circumstances, the trial court ruled that Liberty's actions amounted to excusable neglect.

¶19    In contrast, on appeal V&J cites to *Casper v. American International South Insurance Co.*, 2011 WI 81, ¶34, 336 Wis. 2d 267, 800 N.W.2d 880, where our supreme court reviewed the same issue of whether a motion for default judgment for failure to answer a complaint was properly denied based on excusable neglect. The *Casper* court determined that the defendant's employees involved had an "established routine" that had worked previously "to provide timely answers" to plaintiffs. *Id.*, ¶47. The court went on to explain that "[w]hen an entity is processing thousands of complaints, a few inadvertent mishaps are bound to occur" and that trial courts should "carefully scrutinize what steps an organization has taken to avoid such mishaps, how quickly the organization responds when it discovers its delinquency, and whether its delay has caused prejudice to the plaintiffs." *Id.*

---

[4] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶20    Here, the trial court discussed Liberty's response to the delinquency and the issue of prejudice to V&J. However, the court did not make findings regarding any company policies Liberty has that would have normally prevented the problem that occurred in this case. In fact, V&J sought to have discovery allowed on this issue, but not until *after* the court had ruled on V&J's motion for default judgment. That request was denied, as Liberty's motions for summary judgment were already pending at that point, but V&J renews that request on appeal.

¶21    However, based on the procedural posture of this case, we conclude that we need not address the arguments raised by V&J regarding its motion for default judgment because, based on the outcome of Liberty's summary judgment motion, the matter of the default judgment motion is essentially moot. V&J's initial complaint listed only Liberty Mutual Insurance Company as a defendant; its motion for default judgment was also solely against Liberty Mutual Insurance Company. V&J did not amend its complaint to add Liberty Mutual Fire Insurance Company until after the trial court had denied its motion for default judgment.

¶22    As noted above, the result of the subsequent summary judgment motion was that all of V&J's claims against both Liberty entities were dismissed. Specifically, the trial court held that Liberty Mutual Insurance Company was an improperly named defendant, a fact which was not disputed by V&J. Furthermore, V&J did not appeal that portion of the trial court's order.

¶23    "An issue is moot when its resolution will have no practical effect on the underlying controversy." *State ex rel. Olson v. Litscher*, 2000 WI App 61, ¶3, 233 Wis. 2d 685, 608 N.W.2d 425. "In other words, a moot question is one which circumstances have rendered purely academic." *Id.* "Generally, moot issues will not be considered by an appellate court." *Id.*

¶24 Although the Liberty entities are affiliated, they are in fact separate entities. The fact that V&J's claims against Liberty Mutual Insurance Company were dismissed without dispute—on summary judgment or on appeal—renders V&J's arguments relating to the denial of its default judgment against that entity as "purely academic" and without a "practical effect on the underlying controversy"; in other words, the denial of the default judgment motion is a moot issue. *See id.* Thus, we will not discuss this issue further and, accordingly, we affirm the trial court's denial of V&J's motion for default judgment.

*Grant of Summary Judgment*

¶25 We next address the trial court's grant of summary judgment in favor of Liberty. This court reviews a trial court's decision to grant summary judgment independently, applying the same methodology, in accordance with WIS. STAT. § 802.08. ***Kohn v. Darlington Cmty. Sch.***, 2005 WI 99, ¶11, 283 Wis. 2d 1, 698 N.W.2d 794. Summary judgment shall be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sec. 802.08(2). In determining whether summary judgment "'was appropriately granted, we view the summary judgment materials in the light most favorable to the nonmoving party.'" ***Kohn***, 283 Wis. 2d 1, ¶11 (citations and brackets omitted).

¶26 First, as noted above, the trial court granted summary judgment in favor of Liberty Mutual Insurance Company, and V&J does not appeal that portion of the trial court's order.

¶27 Regarding the trial court's grant of summary judgment in favor of Liberty Mutual Fire Insurance Company, the court concluded that there was no

initial grant of coverage for the losses of V&J from the New York actions. "Insurance policies are contracts," that is, agreements between the contracting parties. *Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶23, 233 Wis. 2d 314, 607 N.W.2d 276. "Interpretation of an insurance contract is a question of law which this court reviews *de novo*." *City of Elkhorn v. 211 Centralia St. Corp.*, 2004 WI App 139, ¶19, 275 Wis. 2d 584, 685 N.W.2d 874.

¶28 A court's interpretation of an insurance policy "seeks to determine and give effect to the intent of the contracting parties" and must be construed "as they would be understood by a reasonable person in the position of the insured." *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. Furthermore, if the language of the policy is unambiguous, "we apply its literal meaning." *See Wisconsin Label Corp.*, 233 Wis. 2d 314, ¶23.

¶29 The first step in policy interpretation is to determine whether the policy makes an initial grant of coverage. *American Girl*, 268 Wis. 2d 16, ¶24. Here, the trial court determined that there was no initial grant of coverage based on the nature of the New York actions. These actions alleged employment law violations involving the unlawful retention of gratuities; paying subminimum wages and failing to pay the correct rate for overtime; failure to provide maintenance pay for uniforms; and failure to reimburse employees for vehicle expenses.

¶30 In its decision, the trial court referred to the definitions in the policies for EBL benefits, which it found to be unambiguous. The court found that the types of programs set forth in the EBL endorsements did not include the type of wage claims alleged in the New York actions. In other words, the court held that the acts alleged in these actions did not involve the administration of employee benefit programs, and therefore did not invoke coverage.

10

¶31     V&J's argument focuses on the claims relating to vehicle expense reimbursement, asserting that these claims involve the administration of "transportation subsidies," which are covered under the EBL endorsements. The trial court rejected this argument, pointing to the dictionary definition of "subsidy," which is "a grant or gift of money." The trial court reasoned that a transportation subsidy, as set forth in the policy, is generally understood to be a "fringe" benefit, and is thus distinguishable from the costs described in the allegations of the New York actions—those required to be reimbursed to employees under state and federal minimum wage laws. In fact, the court stated that adopting this argument would "expand [the policy] definition in a manner inconsistent with the other benefits included in the list of covered programs."

¶32     In support of its findings, the trial court relied on several cases from other jurisdictions where it was concluded, under similar circumstances, that wage-based claims do not qualify for EBL coverage. *See Cashman v. Bayland Bldgs., Inc.*, 2016 WL 2766643 (E.D. Wis. May 12, 2016); *Berkshire-Cranwell Ltd. P'ship v. Tokio Marine & Nichido Fire Ins. Co.*, 874 F. Supp. 2d 41 (D.Mass. 2012); *Adams v. Hartford Cas. Ins. Co.*, 2015 WL 12642305 (C.D.Cal. Nov. 23, 2015).

¶33     In contrast, V&J relies on *Brown County Attorneys Ass'n v. Brown County*, 169 Wis. 2d 737, 487 N.W.2d 312 (Ct. App. 1992), which involved a dispute over whether certain "fringe" benefits—including mileage reimbursement—affected wage rates. *Id.* at 743-44. This court determined that mileage reimbursement was a fringe benefit that did not affect wage rates. *Id.* at 744.

¶34     However, the allegations relating to transportation costs in the New York actions do not comport with that characterization. Those actions were brought

under state and federal laws that regulate minimum wage and require employers to provide employees with "sufficient reimbursements for employment-related expenses … to ensure that employees' hourly wages equal or exceed the required minimum wage after such expenses are counted against the hourly wages." The complaints allege that V&J had a company policy which set a specific amount to be reimbursed to its employees for each delivery made, and that amount, when considered in conjunction with the vehicle maintenance costs the employees incurred during those deliveries, resulted in compensation that was below minimum wage, in violation of state and federal law.

¶35    Furthermore, the trial court specifically held that the allegations in the New York actions did not involve the "administration" of employee benefit programs as defined in the policies. The allegations against V&J were based on "corporate policy" as opposed to the "ministerial activities—providing information, handling records, or making individual status determinations—required to invoke coverage under the policies' definition of 'administration.'"

¶36    We conclude, as the trial court did, that the nature of the New York actions involve wage claims, and not employee benefits. We further conclude that the provisions in the EBL endorsements are unambiguous. Accordingly, we reject V&J's contention that these allegations should be construed as arising from the administration of an employee benefits program for transportation subsidies. We therefore conclude that there was no initial grant of coverage for the New York actions under the EBL endorsements to V&J's policies with Liberty.

¶37    Moreover, the trial court also found that the allegations against V&J involved intentional conduct, as opposed to negligence. Specifically, the court stated that the allegations in the New York actions were the result of "wage,

12

overtime and expense reimbursement policies": the intentional act of creating a company policy. That V&J may have "misconstrued applicable state and federal law" in establishing these policies "does not convert this conduct to a negligent act." Put another way, because the EBL endorsements apply only to negligent acts committed in the administration of employee benefits, we agree with the trial court's conclusion that there was no initial grant of coverage on that basis, either.

¶38    For these reasons, based on our review of the policies as well as the rest of the record and our application of the relevant law, we conclude that the trial court properly granted summary judgment in this case. *See **Kohn***, 283 Wis. 2d 1, ¶11. Accordingly, we affirm.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.